**Opinion issued June 21, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00838-CV

————————————

## THE IOLA BARKER AND JAMES TRICE, Appellants

## V.

## MONICA HURST AND SCOTT MARTINDALE, Appellees

On Appeal from the 12th District Court
Grimes County, Texas
Trial Court Case No. 34,116

## MEMORANDUM OPINION

In this interlocutory appeal,[1] appellants, The Iola Barker ("the Barker") and James Trice, challenge the trial court's denial[2] of their motion to dismiss, pursuant to the Texas Citizens' Participation Act ("TCPA"),[3] the claims of appellees, Monica Hurst and Scott Martindale. In two issues, the Barker and Trice argue that the trial court erred in denying their motion to dismiss the claims against them because their motion survived Hurst's nonsuit and neither appellant presented clear and specific evidence of a prima facie case.

We reverse and remand.

## Background

In April 2017, the Barker, an anonymous blog, published several articles about the Iola Independent School District (the "District") and its pursuit of a "District of Innovation" ("DOI") designation. A DOI designation allows a district to declare exemptions from certain provisions of the Texas Education Code.[4] To achieve the DOI designation, the District created the Local Innovation Planning Committee ("LIPC") to collect public feedback and develop a plan. The Barker,

---

[1]   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(a) (West 2015) (providing that if a court does not rule on a motion to dismiss within the time prescribed, the motion is deemed denied by operation of law and the moving party may appeal).

[2]   *See id.*

[3]   *See id.* §§ 27.001–.011 (West 2015).

[4]   *See* TEX. EDUC. CODE ANN. §§ 12A.001–.009 (West 2015).

2

reported on potential effects that it believed such designation might have on teachers, administrators, students, and parents, and encouraged members of the public to get involved by attending public hearings on the issue.

Before a District hearing on April 6, 2017, the Barker reported that Hurst, the District's "Director of Technology," had publicly posted on her Facebook page a "meme," or photograph with superimposed comments, depicting a scene from a movie, *Men in Black*.[5]  The Barker re-published the meme, adding commentary, as follows:

> For your judgment, here is a post that was on a member of administrations' Facebook page and was open to the public.



> Sure, it seems innocent until you realize what the device in the picture accomplishes. As previously discussed, this device is a Neuralizer

---

[5]  MEN IN BLACK (Columbia Pictures 1997).

and it wipes the memories (opinions) of those that it is used on and the user then replaces the wiped memories (opinions) with what they want the victim to believe. To us this is implying that we can form our own opinions but they are going to ignore them and do exactly what they want to do and assume that everyone shares the administration's opinions . . . .

In her First Amended Petition, Hurst complained that the Barker, in re-publishing her Facebook posting, had included her Facebook profile picture, which depicted her husband and two minor children. She alleged that the publication of a photograph of her family was "done to embarrass, provoke, intimidate, or harm" her and that the "publisher or writer of [the Barker] published the article and the photo depicting [her] children, with malice, as the photo had absolutely no journalistic value to the opinion or article in the publication." She asserted that the publication "has or will cast and place innocent children into disputes, situations, and ridicule for which the children have no control or responsibility." She sought an injunction, "ordering and preventing [the Barker] from utilizing the photographs of children or anyone else, without the written permission and consent of the natural mother or father of any child." Through discovery, Hurst identified Trice as the author of the blog.

Subsequently, Martindale, a District principal, joined the lawsuit, alleging that, "beginning at or around the month of April, 2017," the Barker published, "without [his] permission, several stories that mentioned [him] by name." He alleged that "the publication of [his] name" was intended to "hurt and harm [him]";

4

was done with malice; and "has or will cast and place [him] and his family into disputes, situations, and ridicule for which [he] has no control or responsibility."

Hurst and Martindale both sought damages of "less than $100,000," "in an amount that the jury . . . determine[d] fair and reasonable."

The Barker and Trice filed special exceptions, asserting that neither Hurst nor Martindale had alleged, or stated the elements of, any specific cause of action. After the trial court denied their special exceptions, the Barker and Trice filed a motion to dismiss the suit, pursuant to the TCPA (the "TCPA motion to dismiss"). They asserted that the TCPA mandated dismissal because Hurst and Martindale had brought their claims to uncover Trice's identity and to quell his exercise of the right of free speech. The statements at issue involved discussion of the District's attempt to obtain a DOI designation, and the blog posts discussed Hurst and Martindale solely within the context of their actions as public officials, both as administrators at the District and as members of the LIPC. Further, the Barker and Trice asserted, Hurst and Martindale could not establish "by clear and specific evidence a prima facie case for each essential element" of their claims.[6] The Barker and Trice sought dismissal *with* prejudice and asserted that they were statutorily entitled to an award

---

[6] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

of attorney's fees and sanctions.[7] In support of their request for attorney's fees, they submitted the affidavit of their attorney and billing statements.

Days later, Hurst filed a motion for nonsuit without prejudice, stating that she no longer wished to prosecute her claim, which the trial court granted.

Martindale filed a response to the motion to dismiss, in which he identified his claim as that of libel per se. He attached, as his evidence to defeat the TCPA motion to dismiss, his affidavit, the affidavit of a teacher, Jenna Conner, and 100 pages of blog entries from the Barker. In his affidavit, Martindale testified that, on April 25, 2017, in a blog titled, "Donnez-leur un pouce et ils prendront un mile," the Barker commented:

> It appears to us that they haven't had any issues getting rid of our teachers. Oh, by the way, this week is the week for the School Board to vote on teacher[s'] contracts. Now that Martindale's wife is an Iola ISD employee, it will be much easier for them to choose which ones they need to get rid of to open positions for their friends, i.e. the kindergarten teacher that use [sic] to be the Martindale[s'] nanny.

Martindale complained that the statement alleged that he had "engaged in improper terminating and hiring practices by forcing out an existing teacher so that he could hire an individual [who] had previously worked for him and his family as a nanny." He identified the teacher referenced as Jenna Conner, whom, he asserted, had not worked for him, or his family, as a nanny or in any other similar capacity. He

---

[7] *See id.* § 27.009.

complained that Trice had not spoken with him to verify the veracity of the comment before publishing it, that the "accusation" was "blatantly untrue," and that it had "injured [his] reputation," "exposed [him] to contempt in the community," and "called into question [his] honesty, integrity, virtue, and reputation." Conner, in her affidavit, testified that she "believe[d]" that she was the teacher referenced in the comment, that she had never worked as a nanny for Martindale or his family, and that Trice had not spoken with her.

Martindale asserted, as evidence of the elements of his defamation claim[8] to defeat the TCPA motion to dismiss, that Trice had published in the Barker the statement at issue, i.e., that Conner was previously his nanny and he engaged in improper hiring practices; that the affidavits establish the falsity of the statement; and that the statement was defamatory because it tended to injure his reputation, personally and professionally. Regarding actual malice, Martindale requested a continuance in order to depose Trice about his state of mind. Martindale asserted

---

[8] *See id.* § 73.001 (West 2017) (defining libel as "defamation expressed in written or other graphic form"). The applicable elements of a defamation claim are: (1) the defendant made a false statement of fact to a third party; (2) the statement was defamatory concerning the plaintiff; (3) when the plaintiff is a public official or public figure, as it is undisputed here, the defendant acted with actual malice; and (4) the statement caused damages, unless the statement is defamatory per se, in which case damages may be presumed. *See Deaver v. Desai*, 483 S.W.3d 668, 676 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

that "there [was] no requirement that proof of damages be offered" because the statement at issue was "defamatory per se."

At the hearing on the motion to dismiss, as pertinent here, the Barker and Trice asserted that the complained-of statement did not constitute defamation per se and that Martindale had not shown "clear and specific" evidence of damages, as required.

After the hearing, the trial court found that the TCPA applies because Martindale's claim was based on the Barker's and Trice's exercise of the right of free speech; the communication at issue was made in connection with a matter of public concern; and Martindale is a "public official or public figure." The trial court further found that Martindale had established, by clear and specific evidence, that the Barker and Trice had "made a false statement of fact to a third person"; that "the statement was defamatory concerning [Martindale]"; and that "the statement caused damage to [Martindale]." The trial court ordered that good cause existed to allow Martindale, as requested in his response to the motion to dismiss, to take Trice's deposition on the "limited issue of actual malice."

Thereafter, the Barker and Trice's motion to dismiss was denied by operation of law.[9]

---

[9] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(a) ("If a court does not rule on a motion to dismiss . . . in the time prescribed . . . , the motion is considered to have been denied by operation of law and the moving party may appeal.").

# TCPA

In a portion of their first issue, the Barker and Trice assert that their TCPA motion to dismiss survived Hurst's nonsuit. In the remaining portion of their first issue and in their second issue, the Barker and Trice argue that the trial court erred in denying their TCPA motion to dismiss the claims against them because Hurst and Martindale did not establish by "clear and specific evidence a prima facie case for each essential element" of their claims.

## *Standard of Review and Principles of Law*

The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West 2015). It "protects citizens . . . from retaliatory lawsuits that seek to intimidate or silence them" from exercising their First Amendment freedoms and provides a procedure for the "expedited dismissal of such suits." *In re Lipsky*, 460 S.W.3d 579, 584, 586 (Tex. 2015); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015). The TCPA is intended to identify and summarily dispose of lawsuits "designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *In re Lipsky*, 460 S.W.3d at 589. It is to be "construed liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b).

A defendant who believes that a lawsuit is based on his valid exercise of First Amendment rights may move for expedited dismissal of the suit. *In re Lipsky*, 460 S.W.3d at 586. The defendant must first show by a preponderance of the evidence that the TCPA applies, that is, that the plaintiff's "legal action," i.e., "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief," is based on, relates to, or is in response to the defendant's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association. *Id.* at 586–87; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *James v. Calkins*, 446 S.W.3d 135, 145 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). The first step of the inquiry is a legal question that we review de novo. *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

If the initial showing is made, the burden shifts to the plaintiff to establish by "clear and specific evidence a prima facie case for each essential element" of his claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *In re Lipsky*, 460 S.W.3d at 587–88; *Newspaper Holdings*, 416 S.W.3d at 80. "The legislature's use of 'prima facie case' in the second step of the inquiry implies a minimal factual burden: '[a] prima facie case represents the minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true.'" *Schimmel v. McGregor*, 438 S.W.3d 847, 855 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (quoting *KTRK*

10

*Television, Inc. v. Robinson*, 409 S.W.3d 682, 688 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). In determining whether a legal action should be dismissed, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). We review the pleadings and evidence in a light favorable to the plaintiff. *Newspaper Holdings*, 416 S.W.3d at 80–81. If the defendant's constitutional rights are implicated and the plaintiff has not met the required showing of a prima facie case, the trial court must dismiss the plaintiff's claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005.

***Hurst***

As a threshold matter, the Barker and Trice assert that their TCPA motion to dismiss constituted a claim for affirmative relief that survived Hurst's nonsuit.

Generally, a plaintiff may dismiss a case or take a nonsuit at any time before she introduces all of her evidence, excluding rebuttal evidence. TEX. R. CIV. P. 162. Any such dismissal, however, "shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief" and "shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of the dismissal." *Id.*

A motion to dismiss a suit under the TCPA seeks dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free

11

speech." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a).  If the trial court dismisses the legal action, the court "shall award" to the moving party:

    (1)    court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and

    (2)    sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

*Id*. § 27.009.  Courts have held that a motion to dismiss under the TCPA constitutes a claim for affirmative relief.  *Duchouquette v. Prestigious Pets, LLC*, No. 05-16-01163-CV, 2017 WL 5109341, at *3 (Tex. App.—Dallas Nov. 6, 2017, no pet.); *see also CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc*., 390 S.W.3d 299, 300 (Tex. 2013) ("A motion for sanctions is a claim for affirmative relief that survives nonsuit if the nonsuit would defeat the purpose of sanctions.").

The Barker and Trice, in their TCPA motion to dismiss Hurst's claim, sought dismissal *with* prejudice and an award of sanctions, attorney's fees, and costs against Hurst.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009.  Days later, Hurst filed a motion to nonsuit her claim against the Barker and Trice, stating that she no longer wished to prosecute her claim, requesting a nonsuit *without* prejudice.  The trial court then granted Hurst a nonsuit without prejudice.

Rule 162 expressly provides that a nonsuit "shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief" and "shall have

12

no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of the dismissal." *See* TEX. R. CIV. P. 162. The Barker and Trice's motion, in which they sought dismissal of Hurst's lawsuit with prejudice and attorney's fees, costs, and sanctions, constituted a "pending claim for affirmative relief" within the meaning of rule 162. *See Breitling Oil & Gas Corp. v. Petroleum Newspapers of Alaska, LLC*, No. 05-14-00299-CV, 2015 WL 1519667, at *3 (Tex. App.—Dallas Apr. 1, 2015, pet. denied) (mem. op.) (holding that, under express language of rule 162, nonsuit had no effect on pending motion to dismiss under TCPA); *see also CTL/Thompson Tex., LLC*, 390 S.W.3d at 300 (holding, in architect liability suit, that nonsuit without prejudice had no effect on defendant's pending claim for affirmative relief, including request for dismissal with prejudice and award of fees, expenses, costs, and sanctions); *Villafani v. Trejo*, 251 S.W.3d 466, 467 (Tex. 2008) (holding, in health care liability context, that nonsuit had no effect on pending relief for dismissal with prejudice and attorney's fees under statute). Thus, although the trial court's order granting Hurst a nonsuit resolved Hurst's claim, it had no effect, and did not resolve, the Barker and Trice's pending claim.

We sustain the portion of the Barker and Trice's first issue, in which they assert that their TCPA motion to dismiss survived Hurst's nonsuit.

We do not, however, reach the merits of the Barker and Trice's TCPA motion to dismiss with respect to Hurst's claim because there is no indication in the record that the trial court actually considered the motion in regard to her.

In *Duchouquette*, after the defendant posted an unfavorable online review of the plaintiff's business and the plaintiff sued the defendants for defamation, the defendants filed a motion to dismiss, under the TCPA. 2017 WL 5109341, at *1. The plaintiff did not respond to the motion; rather, it filed a notice of nonsuit and request for dismissal without prejudice. *Id.* The trial court granted the plaintiff's nonsuit and denied the defendants' TCPA motion to dismiss. *Id.* The defendants appealed, arguing that their motion to dismiss constituted an independent claim for relief that survived the plaintiff's nonsuit, and the appellate court agreed. *Id.* at *2–3. The defendants further argued that they were entitled to recover their attorney's fees and costs because the plaintiff did not establish the essential elements of its claim by clear and specific evidence, as required under the TCPA. *Id.* at *4. Because, however, the plaintiff, having nonsuited its case, had not responded to the defendants' motion to dismiss, no hearing on the issue was held, and there was no indication that the trial court had actually considered the TCPA motion to dismiss, the appellate court remanded the case to the trial court for consideration of the motion on the merits. *Id.*

14

Similarly, here, after the trial court granted Hurst's nonsuit without prejudice, she did not respond to the Barker and Trice's TCPA motion to dismiss and, at the hearing, there was no discussion of the motion as it pertained to her. *See id.* Further, the trial court's order on the motion speaks only of Martindale and refers to "plaintiff" in the singular. Although the TCPA provides that "[i]f a court does not rule on a motion to dismiss . . . [within] the time prescribed . . . , the motion is considered to have been denied by operation of law," there is no indication in the record that the trial court actually considered the Barker and Trice's motion to dismiss as it relates to Hurst. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(a). Because, as discussed above, Hurst's non–suit did not resolve the Barker and Trice's TCPA motion to dismiss, which constitutes an outstanding claim for affirmative relief, and there is no indication that the trial court actually considered the motion as it relates to Hurst, we remand this portion of the case to the trial court for consideration of the TCPA motion on the merits.

### *Martindale*

In their second issue, the Barker and Trice argue that the trial court erred in denying their TCPA motion to dismiss Martindale's claim because he did not establish by "clear and specific evidence a prima facie case for each essential element" of his claim.

15

We first consider whether the Barker and Trice established that the TCPA applies, that is, whether the claim is based upon, relates to, or is in response to the Barker and Trice's exercise of the right of free speech, the right to petition, or the right of association. *See In re Lipsky*, 460 S.W.3d at 586–87. The Barker and Trice asserted that Martindale's claim is based on their exercise of the right of free speech and right to petition. The trial court found that Martindale's claim was based on their exercise of the right of free speech. We need only focus on the right of free speech.

The TCPA defines the "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1). A "matter of public concern" includes an issue related to "(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id*. § 27.001(7).

Martindale's claim is based on Trice's electronic statement published by the Barker, a web-based forum. The statement constitutes a "communication[]," as defined in the statute. *See id.* § 27.001(1); *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015 no pet.) (holding that statements on website qualified as communication for purposes of TCPA). Further, the complained-of

16

statement regards a "matter of public concern," as defined, because it relates to community well-being, the government, and to public officials. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7). Martindale asserted at the hearing on the motion to dismiss that he is a public official.

Thus, the burden switched to Martindale to establish by "clear and specific evidence a prima facie case for each essential element" of his claim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *In re Lipsky*, 460 S.W.3d at 592.

Martindale's claim is that the statements at issue constitute libel per se. Libel is defamation expressed in written or other graphic form. TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2017). The elements of a defamation claim are: (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, unless the statements are defamatory per se. *In re Lipsky*, 460 S.W.3d at 593.

Whether a publication constitutes an actionable statement of fact depends on its verifiability and the context in which it was made. *See Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002). A statement is defamatory if it "tends to injure a . . . person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury" or to "impeach" the person's "honesty, integrity, virtue or reputation." TEX. CIV. PRAC. & REM. CODE ANN. § 73.001; *Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013). Further, it is one that is derogatory, degrading, somewhat

shocking, and contains elements of disgrace. *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc*., 441 S.W.3d 345, 356 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). A communication that hurts the plaintiff's feelings or is merely unflattering, abusive, annoying, irksome, or embarrassing is not actionable. *Id*. We construe the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Musser v. Smith Protective Servs., Inc*., 723 S.W.2d 653, 655 (Tex. 1987). "Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law for the court." *John Moore Servs., Inc*., 441 S.W.3d at 356. Questions of law are subject to de novo review. *Id.*

The "requisite degree of fault" depends upon the status of the person allegedly defamed. *In re Lipsky*, 460 S.W.3d at 593. A private individual need only prove negligence, whereas a public figure or official must prove actual malice. *Id.* "Actual malice" in this context means that the statement was made with knowledge of its falsity or with reckless disregard for its truth. *Huckabee v. Time Warner Entm't Co*., 19 S.W.3d 413, 420 (Tex. 2000) ("Actual malice in a defamation case is a term of art. Unlike common-law malice, it does not include ill-will, spite, or evil motive.").

Finally, the plaintiff must plead and prove damages, unless the defamatory statements are defamatory per se. *In re Lipsky*, 460 S.W.3d at 593. "Texas recognizes the common-law rule that defamation is either per se or per quod." *Dallas*

18

*Morning News, Inc. v. Tatum*, No. 16-0098, 2018 WL 2182625, at *3 (Tex. May 11, 2018). Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed. *In re Lipsky*, 460 S.W.3d at 593–94. For example, accusing a person of committing a crime, having a foul or loathsome disease, or engaging in serious sexual misconduct, or making remarks that adversely reflect on a person's fitness to conduct his business or trade, may be deemed defamatory per se. *Id.* at 596. If the court must resort to innuendo or extrinsic evidence to determine that a statement was defamatory, then it constitutes defamation per quod, i.e., not apparent on its face. *Meisel v. U.S. Bank, N.A.*, 396 S.W.3d 675, 680 (Tex. App.—Dallas 2013, no pet.); *see also Hancock v. Variyam*, 400 S.W.3d 59, 64 (Tex. 2013) ("Defamation per quod is defamation that is not actionable per se."). Whether a statement qualifies as defamation per se is generally a question of law. *In re Lipsky*, 460 S.W.3d at 596.

If a statement qualifies as defamation per se, Texas law presumes the existence of general damages without proof of an actual injuury. *Hancock*, 400 S.W.3d at 65. It does not, however, presume any particular amount of damages beyond nominal damages. *Salinas v. Salinas*, 365 S.W.3d 318, 320 (Tex. 2012). "Awards of presumed actual damages are subject to appellate review for evidentiary support." *Hancock*, 400 S.W.3d at 66. Special damages, on the other hand, are never presumed,

19

as they represent specific economic losses that must be proven. *In re Lipsky*, 460 S.W.3d at 593–94.

*Damages*

The Barker and Trice contend that Martindale neither presented clear and specific evidence that the complained-of comment constitutes defamation per se nor presented such evidence of damages. Martindale argued that he was not required to present clear and specific evidence of damages because the comment is defamatory per se.

We first consider whether the statement at issue constitutes defamation per se, which would absolve Martindale of presenting evidence of damages. A statement constitutes defamation per se if it "injures a person in [his] office, profession, or occupation." *Bedford v. Spassoff*, 520 S.W.3d 901, 905 (Tex. 2017). A statement that injures one in his profession is one that "ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office." *Hancock*, 400 S.W.3d. at 66 (quoting RESTATEMENT (SECOND) OF TORTS § 573 (AM. LAW. INST. 1977)). For example, "[w]hen peculiar skill or ability is necessary, an imputation that attributes a lack of skill or ability tends to harm the other in his business or profession." *Id.* at 67 (quoting RESTATEMENT (SECOND) OF TORTS § 573 cmt. c). "Disparagement of a general character, equally discreditable to all persons,

20

is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 573 cmt. e). The inquiry is not whether a reputation is necessary for a profession, because all professions require reputations of some sort and, thus, all statements defaming professionals would be defamatory per se. *Id.* The proper inquiry, rather, is whether a defamatory statement accuses a professional of lacking a peculiar or unique skill that is necessary for the proper conduct of the profession. *Id.* We consider the pleadings and supporting and opposing affidavits stating the facts on which the liability is based. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a).

Martindale, in his affidavit, alleged that he was defamed by the following comment by Trice on the Barker:

> It appears to us that they haven't had any issues getting rid of our teachers. Oh, by the way, this week is the week for the School Board to vote on teacher[s'] contracts. Now that Martindale's wife is an Iola ISD employee, it will be much easier for them to choose which ones they need to get rid of to open positions for their friends, i.e. the kindergarten teacher that use [sic] to be the Martindale[s'] nanny.

He asserted that the teacher hired to fill the referenced kindergarten position, Jenna Conner, has not worked for him or his family as a nanny or in another other similar capacity. In his response to the motion to dismiss, he explained that the statement alleges that he "engaged in improper terminating and hiring practices by forcing out

21

an existing teacher so that he could hire an individual [who] had previously worked for him and his family as a nanny."

Read carefully, however, the complained-of comment expressly refers to hiring decisions being made by the school board, through a voting process:

> It appears to us that they haven't had any issues getting rid of our teachers. Oh, by the way, this week is the week *for the School Board to vote on teacher[s'] contracts*. Now that Martindale's wife is an Iola ISD employee, it will be much easier *for **them** to choose* which ones they need to get rid of to open positions for their friends, i.e. the kindergarten teacher that use [sic] to be the Martindale[s'] nanny.

(Emphasis added.) The comment does not expressly state that Martindale engaged in any particular conduct.

To constitute defamation per se, the defamatory nature of the challenged statement must be apparent on its face without reference to extrinsic facts or "innuendo." *KTRK Television, Inc.*, 409 S.W.3d at 691; *see also Moore v. Waldrop*, 166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.) (noting that "the very definition of 'per se,' 'in and of itself,' precludes the use of innuendo"). If the court must resort to innuendo or extrinsic evidence to determine whether a statement is defamatory, the remark, if defamatory at all, can only constitute defamation per quod and requires proof of injury and damages. *KTRK Television, Inc.*, 409 S.W.3d at 691.

Here, the defamatory nature that Martindale espouses, i.e., that *he* "engaged in improper terminating and hiring practices by forcing out an existing teacher so that he could hire an individual [who] had previously worked for him and his family as a

22

nanny," requires reference to extrinsic facts or innuendo. *See id.* Further, the statement does not accuse Martindale of lacking a peculiar or unique skill that is necessary for proper conduct as a school principal. *See Hancock*, 400 S.W.3d at 67. Thus, we conclude that the complained-of statement does not constitute defamation per se. *See Bedford*, 520 S.W.3d at 905.

Because the statement at issue is not defamatory per se, Martindale had the burden to present "clear and specific evidence" of injury and damages. *See id.*; *Salinas*, 365 S.W.3d 318, 320 (holding that general damages are presumed only if statement qualifies as defamation per se).

With respect to damages, Martindale, in his petition, stated that the complained-of comment "has or will cast and place [him], and his family, into disputes, situations, and ridicule for which [he] ha[d] no control or responsibility." He sought damages "in an amount" that the jury determined was "fair and reasonable," not to exceed $100,000. In his response to the motion to dismiss, he asserted that he was not required to prove actual damages because the complained-of comment constituted defamation per se and thus general damages were presumed. In his affidavit, he asserted that the complained-of comment had "injured [his] reputation and exposed [him] to contempt in the community" and had "called into question [his] honesty, integrity, virtue, and reputation."

23

General averments "do not satisfy the Act's clear-and-specific-evidence standard without 'specific facts illustrating how [a defendant's] alleged remarks about [a plaintiff's] activities actually caused such losses.'" *Bedford*, 520 S.W.3d at 906. Rather, clear and specific evidence means that the "plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 904. "In a defamation case that implicates the [Act], pleadings and evidence that establish[] the facts of when, where, and what was said, the defamatory nature of the statements, and *how they damaged the plaintiff* should be sufficient to resist" a motion to dismiss under the Act." *Id*. (emphasis added).

Martindale's affidavit is devoid of any "clear and specific" facts to illustrate how he was damaged. *See id*. at 904–05 (concluding that neither petition, nor response to motion to dismiss, nor affidavit attached to response, identified any actual damages). Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case. *John Moore Servs*., 441 S.W.3d at 355. We conclude that Martindale did not establish damages by clear and specific evidence. *See Bedford*, 520 S.W.3d at 904–05 (holding that, "[e]ven if the Facebook post here were defamatory, the statement is not defamation per se and Spassoff and the Dodgers failed to establish damages by clear and specific evidence").

Accordingly, we hold that the trial court erred in denying the Barker and Trice's motion to dismiss Martindale's claim against them.

24

We sustain the Barker and Trice's second issue.

## Conclusion

We reverse the order of the trial court. With respect to Hurst's claim, we remand for consideration of the motion to dismiss on the merits. *See Duchouquette*, 2017 WL 5109341, at *4. With respect to Martindale's claim, we remand for dismissal and determination of attorney's fees and sanctions consistent with the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a); *Bedford*, 520 S.W.3d at 906.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.