

# NUMBERS 13-20-00341-CV & 13-20-00383-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **MEGALOMEDIA, INC.,** | **Appellant,** |

**v.**

| | |
|---|---|
| **MAJA RADNOVIC, JEANNE COVEY,** | |
| **BARBARA J. FALLAW,** | |
| **DOROTHY "DOTTIE" PERKINS,** | |
| **ANNJEANETTE WHALEY, ALICIA KIRGAN,** | |
| **AND MATTHEW VENTRESS** | |
| **AKA DESTINEE LASHAEE,** | **Appellees.** |

### On appeal from the 55th District Court
### of Harris County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Tijerina**
**Memorandum Opinion by Justice Longoria**

In two appeals, appellant Megalomedia, Inc. argues the trial court erred in failing

to dismiss the claims against it filed by appellees Maja Radanovic, Jeanne Covey,

Barbara J. Fallaw, Dorothy "Dottie" Perkins, Annjeanette Whaley, Alicia Kirgan, and Matthew Ventress a/k/a Destinee Lashaee. Appellant asserts that these claims should have been dismissed pursuant to: (1) the Texas Citizen's Participation Act (TCPA); and (2) its established affirmative defenses. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001–.011. The trial court originally did not rule on appellant's motions to dismiss, and thus the motions were denied by operation of law, and appellant filed a notice of appeal in appellate cause number 13-20-00341-CV. After appellant filed its notice of appeal, the trial court issued an order granting in part and denying in part appellant's TCPA motions to dismiss, which appellant subsequently appealed in cause number 13-20-00383-CV. We reverse and render in appellate cause number 13-20-00341-CV, and we dismiss appellate cause number 13-20-00383-CV for want of jurisdiction.

## I.     BACKGROUND[1]

Appellant is a television production company that produces reality television shows, including "My 600-lb Life" (the show). Except for Fallaw, who is the mother of Covey and only appeared on the show as a family member, appellees were participants on the show, which "follows the lives of morbidly obese individuals and documents their attempts to reduce their weight to a healthy level." Prior to their appearance on the show, appellant asserts that appellees had to sign certain documents including: a talent agreement, an appearance release, and an acknowledgment and agreement to filming

---

[1] These causes are before this Court on transfer from the Fourteenth Court of Appeals in Houston pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

(collectively, the agreements).[2]

Following their appearances on the show, appellees[3] filed separate lawsuits against appellant[4] asserting claims for negligence, gross negligence, intentional infliction of emotional distress (IIED), promissory estoppel, and fraudulent inducement. Appellant answered, asserting seventeen affirmative defenses, including: "assumption of risk and release of liability based on provisions" in the agreements. The lawsuits were consolidated into one action.

Appellant subsequently filed separate TCPA motions to dismiss as to each appellee, arguing that: (1) appellees' claims are based on or in response to appellant's exercise of the rights of free speech and association, and arise from appellant's acts related to the gathering of information for the production and promotion of the show; (2) appellees could not meet their TCPA burden to avoid dismissal; and (3) appellant was entitled to judgment as a matter of law on its affirmative defenses of express contractual assumption of risk, release of liability, and preclusion based on the parole evidence rule. To each motion, appellant attached each respective appellee's agreements and the declaration of its CFO, Toni Westberry, which stated, in pertinent part, that the agreements were true and correct copies of the agreements signed by appellees.

---

[2] Because she was not a participant in the show, Fallaw only signed an appearance release and an agreement to film.

[3] Although they are not parties to these appeals, the underlying consolidated lawsuit includes additional plaintiffs, Karen Sue Bonner, James Bonner, Sr., and Tera Ann Shumaker, Personal Representative of the Estate of James Edward Bonner, Jr. Appellant did not file TCPA motions to dismiss their claims.

[4] Appellees also sued Megalomedia Studios, LLC, Mansfield Films, LLC, DBA Holdings, LLC, and Discovery Communications, LLC., but the claims were nonsuited.

Appellant filed a supplemental declaration of Westberry, wherein she stated that she is the custodian of records for appellant and was familiar with the "manner in which [appellant's] records are created and maintained."

Appellees responded, arguing that clear and specific evidence was presented for each essential element of their "negligence, [IIED,] and promissory estoppel claims," and that appellant was not entitled to dismissal because it did not establish any affirmative defense and "fact issues exist concerning the enforceability of [the agreements]." Each appellee attached a declaration in which they stated, along similar lines, that they were not given the opportunity to review the agreements before signing them, nor were they advised that they "would be waiving all [their] legal rights against [appellant]."

Appellant replied, arguing that appellees conceded the TCPA's applicability and that they failed to present any evidence to support their gross negligence or fraudulent inducement claims. Further, appellant argued that the evidence presented by appellees on their remaining claims "failed to establish a prima facie case" and disputed appellees' assertions regarding the authenticity of the agreements. A hearing was held, and the trial court took the motions under advisement.

A.      **Appellate Cause Number 13-20-00341-CV**

After thirty days had passed with no ruling, the motions were denied by operation of law. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(a), 27.008. Appellant filed a notice of appeal, assigned appellate cause number 13-20-00341-CV, arguing the trial court erred in allowing its motion to dismiss to be denied by operation of law. We address those issues raised in appellate cause number 13-20-00341-CV below.

4

**B.     Appellate Cause Number 13-20-00383-CV**

Subsequently to appellant filing its notice of appeal in appellate cause number 13-20-00341-CV, the trial court issued an order granting in part and denying in part appellant's TCPA motion. However, because the trial court's order was issued after the TCPA motions to dismiss were denied by operation of law, it is untimely and the operative ruling in this cause is the denial by operation of law. *See Better Bus. Bureau of Metro. Houst., Inc. v. John Moore Servs, Inc.*, 500 S.W.3d 26, 39 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *see also Dall. Morning News, Inc. v. Mapp*, No. 05-14-00848-CV, 2015 WL 3932868, at *3 (Tex. App.—Dallas June 26, 2015, no pet.) (mem. op.). Accordingly, because the trial court was without authority to issue the untimely order, we dismiss appellate cause number 13-20-00383-CV for want of jurisdiction.

## II.     TCPA

In its first issue, appellant contends that the trial court erred in allowing its TCPA motions to dismiss to be denied by operation of law. Arguing that appellees did not dispute that the TCPA applies to the claims in this case, appellant states that appellees failed to establish clear and specific evidence of a prima facie case for each element of their negligence, gross negligence, IIED, promissory estoppel, and fraudulent inducement claims, thereby warranting dismissal pursuant to the TCPA.

**A.     Standard of Review**

We review de novo a trial court's ruling on a TCPA motion to dismiss. *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019). In conducting our review, we consider the pleadings and evidence in a light favorable to the nonmovant. *Dyer v. Medoc*

5

*Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied).

The TCPA is an anti-SLAPP law; "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Fawcett v. Grosu*, 498 S.W.3d 650, 654 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (op. on reh'g). The TCPA is intended "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The TCPA "protects citizens from retaliatory lawsuits that seek to intimidate or silence them" from exercising their First Amendment freedoms and provides a procedure for the "expedited dismissal of such suits." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). We construe the TCPA liberally to effectuate its purpose and intent fully. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(a).

A defendant invoking the act's protections must show first, by a preponderance of the evidence, that the plaintiff's legal action is "based on, relates to, or is in response to" the defendant's exercise of one or more of the enumerated rights. *In re Lipsky*, 460 S.W.3d at 586. If the defendant makes the initial showing, the burden shifts to the plaintiff to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. *See id.* at 587. "Prima facie case" refers to the quantum of

6

evidence required to satisfy the nonmovant's minimum factual burden and generally refers to the amount of evidence that is sufficient as a matter of law to support a rational inference that an allegation of fact is true. *See id.* at 590.

The evidence offered to support a prima facie case must be "clear and specific." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam). Clear and specific evidence means that the nonmovant must provide enough detail to show the factual basis for its claim. *Id*. at 904. If the movant's constitutional rights are implicated and the nonmovant has not met the required showing of a prima facie case, the trial court must dismiss the nonmovant's claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005. The trial court considers "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a).

Because appellees do not dispute the applicability of the TCPA to their claims, only the second step is at issue—accordingly, we address each claim to determine whether appellees met their burden to establish by clear and specific evidence a prima facie case for each element of the claims in question. *In re Lipsky*, 460 S.W.3d at 587.

## B. Negligence

The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). In their responses to appellant's motions to dismiss, appellees alleged that appellant's "acts and omissions constituted negligence because their failure to provide mental health treatment to [appellee] both during the filming of [appellee's] episode and after the bariatric surgery proximately caused harm."

7

Appellees argued that their "mental and physical trauma . . . was a foreseeable result of the deplorable and negligent actions of [appellant]." However, at the hearing on appellant's motions to dismiss, counsel seemingly conceded that there is no recovery for negligent infliction of emotional distress, the underlying basis of appellees' negligence claims: "Although it's pled, if you were to drop that that [sic] case—or drop those claims, we would understand, but, obviously, the intentional claims are where the . . . rubber meets the road in these cases."

The Texas Supreme Court has held that "although we do not recognize an independent cause of action for negligent infliction of mental anguish, mental anguish damages may be available when they are 'caused by defendant's breach of some other legal duty.'" *SCI Tex. Funeral Servs., Inc. v. Nelson*, 540 S.W.3d 539, 546 (Tex. 2018) (quoting *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993)). In response to appellant's motions to dismiss, aside from asserting that appellees' alleged injuries were foreseeable, appellees did not present evidence of any legal duty breached by appellant. Accordingly, because appellees failed to establish a prima facie case for an element of negligence by clear and specific evidence, we sustain appellant's first issue as it relates to appellees' negligence action. *See In re Lipsky*, 460 S.W.3d at 587.

## C.     Gross Negligence

"Gross negligence has both an objective and a subjective component." *Reeder v. Wood Cty. Energy, LLC*, 395 S.W.3d 789, 796 (Tex. 2012). First, "viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *Lee*

8

*Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). An extreme risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). Second, "the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Id.* To establish the subjective component, "the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 173 (Tex. 2005). The risk should be "examined prospectively from the perspective of the actor, not in hindsight." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008). The defendant need not have anticipated the precise manner of harm or to whom the injury would befall to have had awareness of the extreme risk. *U-Haul Int'l., Inc., v. Waldrip*, 380 S.W.3d 118, 139 (Tex. 2012).

Appellant argues that appellees did not "offer[] evidence nor argument to support their gross negligence . . . claims; in fact, they failed to even mention those claims in response to [appellant's] [m]otions to dismiss them." We agree. Having reviewed the record, including appellees' responses to appellant's TCPA motions to dismiss and appellees' brief on appeal, we note that appellees do not address their gross negligence claims against appellants. Therefore, we sustain appellant's first issue as it relates to appellees' gross negligence claims. *See O'Hern v. Mughrabi*, 579 S.W.3d 594, 605 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (finding appellee failed to establish a prima facie case where the elements of appellee's claim were not addressed in response to

9

appellants' motion to dismiss).

**D.      IIED**

In response to appellant's motions to dismiss, appellees alleged that appellant's "acts and omissions caused [IIED] because such actions were so deplorable and so depraved in nature that they fell well below any reasonable standard of common decency." "To recover damages for [IIED], a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe*." Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). Appellees did not, in their response at trial or in their brief on appeal, set out the elements of their IIED cause of action or apply the evidence to each element, but citing to *GTE Sw., Inc. v. Bruce*, appellees argued that appellants subjected appellees to a pattern of harassment which appellees contend is sufficient for a jury to find that appellant "intentionally and recklessly subjected [appellees] to outrageous conduct." 998 S.W.2d 605, 615 (Tex. 1999). To their responses, appellees attached their individual affidavits, in which they averred, similarly though not identically, that appellant forced them to do voiceovers for their episodes for up to fourteen hours a day, would "threaten" appellees with breach of contract if they refused or tried to stop, and "subjected [appellee] to routine, repeated[,] and ongoing harassment." There were also contentions that appellant "forced" appellees to lie to "create dramatic effect" and to eat things they did not want to while on camera.

10

The Supreme Court has set a high standard for "extreme and outrageous" conduct holding that the element is only satisfied if the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017) (internal citations omitted). Thus, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hoffmann–La Roche Inc.*, 144 S.W.3d at 445 (citing *Bruce*, 998 S.W.2d at 612). Appellees rely on the holding from the *Bruce* court to argue that the pattern of harassment rose to the level of outrageous conduct. However, in *Bruce*, the evidence provided showed that the employer subjected the employees to "grossly abusive, threatening, and degrading conduct" for a period of "more than two years." *Bruce*, 998 S.W.2d at 613. There was testimony of regular "abusive profanity" and vulgar language, as well verbal and physical threats that the employees testified "terrorized them." *Id.*

Appellees contend that like the employer in *Bruce*, appellant subjected them to repeated and ongoing harassment. While we do not belittle the allegations made by appellees regarding the conduct of appellant, we find that the alleged conduct does not rise to the level of "extreme and outrageous." Appellees' affidavits presented allegations that appellant subjected them to long hours of filming, sometimes through the night, forced them to do things for "dramatic effect," including telling lies and eating food, and threatened canceling episodes or breach of contract if appellee tried to stop. Appellees were in a contractual relationship with appellant, and while appellees contend the course of conduct they were subjected to by appellant was extreme and outrageous, we note

11

that none of the alleged actions of appellant included physical threats or harm, or otherwise contained threats unrelated to the contract. *See Tiller v. McLure*, 121 S.W.3d 709, 715 (Tex. 2003). Further, here, as in *Tiller*, while the alleged acts were "unquestionably insensitive given the situation . . . rude or insensitive behavior generally does not rise to the level of extreme and outrageous conduct." *Id.* at 714 (quoting *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994)). "We certainly understand judicial reticence to dismiss claims like this one stemming from heinous acts. But except in circumstances bordering on serious criminal acts, we repeat that such acts will rarely have merit as intentional infliction claims." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 818 (Tex. 2005). Accordingly, because appellees' pleadings and evidence do not amount to extreme and outrageous conduct, we sustain appellant's first issue as it relates to appellees' claims for IIED.

## E.     Promissory Estoppel

The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)) (listing requisites of promissory estoppel, including detrimental reliance). Promissory estoppel is not applicable to a promise covered by a valid contract between the parties but can apply to a promise outside a contract. *Trevino & Assocs. Mech., L.P. v. Frost Nat. Bank*, 400 S.W.3d 139, 146 (Tex. App.—Dallas 2013, no pet.).

12

Appellees alleged in their response that appellant "made a promise to [appellees] concerning payment of [their] medical treatment, including surgery, to which [appellees] detrimentally relied." Although the specifics of the alleged promises vary among the appellees, the allegations are generally the same. While each appellee alleges that a promise was made to them regarding payment of their medical bills, they presented no evidence of an actual promise. To support a finding of promissory estoppel, a successful promissory estoppel claim must be based on "an actual promise." *See Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex. App.—Austin 2001, no pet.). The asserted "promise" must be sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it as a commitment to future action. *Comiskey v. FH Partners*, LLC, 373 S.W.3d 620, 635 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Appellees presented no evidence of a promise, nor did they present sufficiently specific evidence that appellant definitively and unconditionally promised to pay their medical bills. *See Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 108 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Therefore, appellees failed to establish a prima facie case as to the promise element of promissory estoppel. *See Comiskey*, 373 S.W.3d at 635. We sustain appellant's first issue as it relates to appellees' promissory estoppel claims.

## F.    Fraudulent Inducement

Fraudulent inducement is a species of common-law fraud that shares the same basic elements: (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted

on by the other party, (4) which the other party relied on, and (5) which caused injury. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) (citing *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (op. on reh'g)).

Appellant argues that appellees did not "offer[] evidence nor argument to support their . . . fraudulent claims; in fact, they failed to even mention those claims in response to [appellant's] [m]otions to dismiss them." We agree. While appellees briefly address their fraudulent inducement claims in their appellate brief, in their response to appellant's motions to dismiss, appellees did not address the elements of fraudulent inducement and they provided no clear and specific evidence of their claim. Accordingly, appellees failed to establish a prima facie case as to their fraudulent inducement claims. *See O'Hern*, 579 S.W.3d at 605. We sustain appellant's first issue as it relates to appellees' fraudulent inducement claims.[5]

### III. CONCLUSION

We reverse the order of the trial court in appellate cause number 13-20-00341-CV and render judgment dismissing appellees' claims. We dismiss appellate cause number 13-20-00383-CV for want of jurisdiction.

NORA L. LONGORIA
Justice

Delivered and filed on the
14th day of April, 2022.

---

[5] Having sustained appellant's first issue, we do not address appellant's second issue as it is not dispositive. *See* TEX. R. APP. P. 47.1.