

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00427-CV

_____

NEXPOINT ADVISORS, L.P., Appellant

V.

UNITED DEVELOPMENT FUNDING IV AND MIKE WILSON, Appellees

---

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-320795-20

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Opinion by Justice Wallach

# OPINION

This case involves the Texas Citizens Participation Act (TCPA or the Act), Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011. NexPoint Advisors, L.P. (Appellant) sued United Development Fund IV (UDF) and Mike Wilson (Wilson) (collectively, Appellees) for defamation, business disparagement, tortious interference with existing contract, and tortious interference with prospective business relations. Appellant sought correction, clarification, or retraction under Texas Civil Practice and Remedies Code Section 73.055; compensatory damages; exemplary damages; attorney's fees; interest; and court costs. Appellees answered and filed motions to dismiss under the TCPA. Appellant responded to the motions to dismiss. The trial court granted both motions to dismiss. A jury trial ensued to determine the amount of trial and appellate attorney's fees to be awarded to Appellees. The jury was asked to assess attorney's fees for both Appellees jointly, not separately. After the jury returned its verdict on attorney's fees, the trial court rendered judgment that Appellant take nothing on its claims against Appellees and awarded to Appellees the attorney's fees found by the jury. This appeal followed.

Appellant contends that the trial court erred in granting Appellees' motions to dismiss because: (1) Appellees were not entitled to relief under the TCPA because the Act's commercial speech exemption applies to the communications in question; (2) if the Act applies, Appellant established a prima facie case of each of its causes of action; and (3) Appellees did not establish a defense as a matter of law. Regarding

2

Wilson, except for the award of attorney's fees which was awarded jointly with UDF, we will affirm the trial court's judgment dismissing Appellant's claims against Wilson as Appellant's Brief failed to comply with Rule 38.1. Tex. R. App. P. 38.1.

As for Appellant's claims against UDF, because we agree that UDF's communications in question are exempted from the TCPA under the Act's commercial speech exemption, we will reverse the judgment of the trial court dismissing Appellant's claims against UDF and remand the case against UDF to the trial court for further proceedings.

Since the trial court submitted the issue of attorney's fees to the jury without segregating Wilson's attorney's fees from UDF's fees, we will reverse and remand Wilson's attorney's fee claim to be submitted to the factfinder in a subsequent proceeding. We will not address Appellant's remaining points as they are not necessary for resolution of the appeal. *See* Tex R. App. P. 47.1.

## I.     Background

### (a)     The parties

UDF is a Maryland real estate investment trust, formed in 2008. According to its investor-relations information, UDF was formed primarily to generate current interest income by investing in secured loans and producing profits from investments in residential real estate. By September 2015, UDF had distributed approximately $164 million to its investors and repurchased $41 million of its shares. As expressed by UDF president Hollis Greenlaw in his July 22, 2020 letter to Appellant, which is a

3

primary basis of Appellant's claims herein, UDF's business plan included a variety of activities designed to produce profit for UDF's investors:

> The Board is fully committed to serving the best interests of the Trust [UDF]. The Board has historically welcomed bona fide discussions of transactions that it views as beneficial to the Trust's shareholders. For example, the Trust has benefitted from *engaging with others in transactions regarding the sale of Trust securities,* securing credit facilities, *listing the Trust's shares on Nasdaq (and subsequent inclusion in the Russell 3000 Index),* acquiring an interest in a regional homebuilder, obtaining corporate and debt ratings, structuring a secured debt offering and securitizing certain Trust assets. [Emphasis added.]

Additionally, Greenlaw testified that because of damage that allegedly occurred to UDF's share value due to an illegal "short and distort" campaign prior to July 22, 2020, UDF's board considered it a "main priority" in the recovery process to "protect[ ] its investors and restor[e] their investments."

Wilson, according to the allegations in Appellant's petition, is an employee of UDF. In his answer, Wilson did not specifically deny being an employee of UDF. In his motion to dismiss and supporting declaration, Wilson stated he is the president of UMT Holdings, L.P., the parent company of UMTH General Services, L.P., (UMTHGS), which is an advisor to UDF. Through UMTHGS, Wilson said he provides investor-relations support to UDF. However, Wilson did not affirmatively deny that he was employed by UDF.

Appellant is a Delaware limited partnership with its principal place of business in Dallas, Texas. It is an alternative asset manager, specializing in high yield credit, public equities, real estate, structured credit, and private equity and special situations.

4

Over a period of two years, NexPoint Diversified Real Estate Trust f/k/a NexPoint Strategic Opportunities Fund (NXDT), a fund managed by Appellant, acquired over 2 million shares of UDF from April 2017 to December 2019 at an aggregate price of over $7.5 million. Cede & Co. acted as the record holder for the shares, but their beneficial owners were funds and accounts advised by Appellant.

**(b)      The events**

On July 8, 2020, Appellant sent a letter to Greenlaw as chairman and CEO of UDF. In that letter, Appellant expressed certain concerns about UDF's management practices and expressed a desire to become involved in UDF's management. Appellant asserted that it was in a unique position to maximize the value of UDF's assets and that any transaction with Appellant would be enthusiastically received by the investment community.

UDF responded with its July 22, 2020 letter, signed by Greenlaw, which acknowledged Appellant's July 8 letter as an expression of Appellant's interest in a "transaction" involving the Trust without stating specific terms. UDF then spent two single-spaced pages explaining its "concerns" about conducting discussions with Appellant arising from the recent "short and distort" campaign, which had allegedly been carried out against it by others, and UDF's belief that Appellant's principals and allies had been complicit in that effort. UDF also explained that its alleged management failures, referenced in Appellant's July 8 letter, were caused by the "short and distort" scheme. However, UDF concluded the July 22 letter by stating,

5

if you wish to open a dialogue regarding a specific transaction, please provide responses to the conflict-of-interest-related questions outlined on the attachment to this letter, and detailed information about the "transaction" that you are interested in discussing with the Trust. The Board will review your responses and indicate whether it is comfortable proceeding.

UDF sent the July 22 letter to Appellant and posted the letter to its public website. UDF also distributed the letter to "due diligence contacts, broker dealers[,] and financial advisers regarding United Development Funding IV." Those are broker dealers that "represented or that had UDF IV accounts" according to Greenlaw. On July 24, 2020, a link to the July 22 letter was further distributed in other industry publications by email. The DI Wire email newsletter, one such publication received by Appellant on July 24, 2020, showed the first link in the email, "UDF IV Responds to NexPoint, Expresses 'Serious Concerns' with Connection to Kyle Bass," which linked to an article that repeated the statements UDF had made in the July 22 letter. Other reiterations of these or similar allegedly defamatory statements were made in other press releases, publications, and public filings over the next several weeks by UDF.

The allegations against Wilson specifically were that he "made phone calls to individual clients and potential client advisers of NALP [Appellant] making the same false statements about NALP described above. Mr. Wilson initiated these communications with the specific intent to harm NALP's current and prospective business relationships." Otherwise, Appellant implied that Wilson was involved with the press releases made by UDF referenced above. The only evidence regarding

Wilson's communications, other than the allegations in the petition, was excerpts from his deposition. From this testimony, Wilson testified that he did not communicate directly with investors, that he is the president of UMT Holdings, L.P. and served as an advisor to UDF, that he was part of the process for reviewing drafts of UDF's allegedly defamatory publications, and that the decision making on the content of the communications in question rested with unnamed senior management of UDF and its lawyers.

## II.     Standards of Review

We review de novo a trial court's ruling on a TCPA motion. *UATP Mgmt., LLC v. Leap of Faith Adventures, LLC*, No. 02-19-00122-CV, 2020 WL 6066197, at *2 (Tex. App.—Fort Worth Oct. 15, 2020, pet. denied) (mem. op.). The first step in a TCPA analysis is to determine if the defendant has demonstrated by a preponderance of the evidence that the TCPA applies to the claims against which the TCPA is being asserted. *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 706 (Tex. App.—Amarillo 2018, pet. denied). In considering whether the TCPA is applicable, the trial court is statutorily required to consider all pleadings, as well as supporting and opposing affidavits stating the facts on which a claim of liability is based. Tex. Civ. Prac. & Rem. Code Ann. § 27.006; *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). However,

"[w]hen it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more." *Hersh*, 526 S.W.3d at 467.[1]

In the second step, the court may not dismiss the action if the nonmovant "establishes by clear and specific evidence a prima facie case for each essential element of the claim." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). A prima facie case is "the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376–77 (Tex. 2019) (citing *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 721 (Tex. 2016) (Boyd, J., dissenting)). The words "clear and specific" are defined to mean, for the former, "'unambiguous,' 'sure,' or 'free from doubt'" and, for the latter, "'explicit' or 'relating to a particular named thing.'" *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (quoting *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)); *Bookout v. Shelley*, No. 02-22-00055-CV, 2022 WL 17173526, at *13 (Tex. App.—Fort Worth Nov. 23, 2022, no pet.) (mem. op.).

More than mere notice pleading is required to establish a prima facie case by the party asserting the claims. Clear and specific evidence means the party asserting the claims must provide sufficient detail to demonstrate the factual basis for the claim.

---

[1]In this case, there is no dispute that the first step was met.

*Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017); *Rogers v. Soleil Chartered Bank*, No. 02-19-00124-CV, 2019 WL 4686303, at *7 (Tex. App.—Fort Worth Sept. 26, 2019) (mem. op.). Conclusory allegations in a pleading do not rise to the level of clear and specific evidence. *Mogged v. Lindamood*, No. 02-18-00126-CV, 2020 WL 7074390, at *9 (Tex. App.—Fort Worth Dec. 3, 2020, pet. denied) (en banc mem. op. on reh'g); *Buckingham Senior Living Cmty, Inc. v. Washington*, 605 S.W.3d 800, 808–09 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Fawcett v. Grosu*, 498 S.W.3d 650, 660 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The party asserting the claims may survive a motion to dismiss even where its pleadings are not sufficiently detailed if it submits evidence that fills the gap. But if neither the pleadings nor the evidence provides the requisite details, the party has failed to meet its burden of proof and the movant is entitled to dismissal. *Rogers*, 2019 WL 4686303, at *7; *see also Washington*, 605 S.W.3d at 808–10 (recognizing that conclusory pleadings without clear and specific supporting evidence are insufficient to establish a prima facie case).[2] In reviewing the trial court's

---

[2]Other courts of appeals require both sufficient pleadings and evidence for the nonmovant to establish a prima facie case. *See Heavenly Homes of S. Tex., LLC v. Infinity Custom Constr., LLC*, No. 13-21-00298-CV, 2022 WL 2069232, at *8 (Tex. App.—Corpus Christi–Edinburg June 9, 2022, no pet.) (mem. op.); *Yu v. Koo*, 633 S.W.3d 712, 729 (Tex. App.—El Paso 2021, no pet.); *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 290 (Tex. App.—Tyler 2021, pet. denied); *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 29 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

ruling on the prima facie case issue, we view the pleadings and the evidence in the light most favorable to the non-movant. *Bookout*, 2022 WL 17173526, at \*10.

A party can avoid the TCPA's burden-shifting requirements by demonstrating that one of the statutory exemptions apply, such as the commercial speech exemption. *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018); *Round Table Physicians Grp., PLLC v. Kilgore*, 607 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at \*7 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.). The party asserting the exemption bears the burden of proving it by a preponderance of the evidence. *UATP Mgmt, LLC*, 2020 WL 6066197, at \*4; *Staff Care, Inc.*, 2019 WL 2121116, at \*8; *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at \*10 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.). The factual allegations contained in the pleadings may alone be sufficient to demonstrate that the nature of the claims is such that the claims are statutorily exempt without need of additional proof. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 480 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd); *Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568, at \*7 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.) (determining whether the commercial speech exemption applies by examining plaintiff's petition); *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 889 (Tex. App.—Austin 2018, pet. denied) (examining "evidence," which consisted of the plaintiffs' pleadings, to determine whether claims

fell within the commercial speech exemption). In addition to the factual allegations, the court may consider other evidence enumerated in Texas Civil Practice and Remedies Code Section 27.006(a), such as affidavits stating the facts on which liability is based. *Abatecola*, 2018 WL 3118601, at *10. However, conclusory and vague allegations and evidence do not constitute competent evidence. *Avid Square Constr., LLC v. Valcon Consulting, LLC*, No. 02-22-00297-CV, 2023 WL 3113950, at *5 (Tex. App.—Fort Worth Apr. 27, 2023, no pet.) (mem. op.).

## III. Analysis

To prevail on a motion to dismiss under the TCPA, the defendant–movant must first prove the TCPA applies—step one of the analysis. *Hersh*, 526 S.W.3d at 467–68; *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017); *Grable Grimshaw Mora, PLLC v. Christopher J. Weber, LLC*, No. 04-21-00064-CV, 2021 WL 3057500, at *2 (Tex. App.—San Antonio July 21, 2021, pet. denied) (mem. op.). As noted, if the TCPA would otherwise apply to the defendant–movant's statement or conduct, the nonmovant can avoid the TCPA's burden of demonstrating a prima facie case by showing that one of the TCPA's exemptions applies, such as the commercial speech exemption. *Grable*, 2021 WL 3057500, at *2; *RigUp, Inc. v. Sierra Hamilton, LLC*, 613 S.W.3d 177, 182 (Tex. App.—Austin 2020, no pet.); *accord Round Table Physicians Grp., PLLC*, 607 S.W.3d at 884; *Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 210–11 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("Regardless of any such defenses, a nonmovant can avoid a dismissal altogether by

11

establishing that its legal action is exempt from the TCPA under a specific statutory exemption.").

The TCPA's commercial speech exemption provides that, even if the TCPA would otherwise apply, it does not apply to

> a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2). This exemption has been interpreted to include four elements:

> (1) the defendant was primarily engaged in the business of selling or leasing goods [or services],
>
> (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services,
>
> (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and
>
> (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam); *see also Grable*, 2021 WL 3057500, at *2; *Kostura v. Judge*, No. 07-20-00310-CV, 2021 WL 2325336, at *4 (Tex. App.—Amarillo June 7, 2021, pet. denied). The burden of proof to establish the commercial speech exemption rests with the party relying on it. *Grable*, 2021 WL 3057500, at *2; *RigUp*, 613 S.W.3d at 187.

12

### (a) Claims against Wilson

Rule 38.1(g) requires the appellant's brief to "state concisely and without argument the facts pertinent to the issues or points presented." Tex. R. App. P. 38.1(g). Rule 38.1(i) requires that the appellant's brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). In the absence of appropriate record citations or a substantive analysis, a brief does not present an adequate appellate issue. *Hornbuckle v. Cadillac*, No. 02-15-00267-CV, 2016 WL 3157569, at *2 (Tex. App.—Fort Worth June 2, 2016, no pet.) (per curiam) (mem. op.); *see also Shetty v. Arconic*, No. 01-19-00158-CV, 2020 WL 2026371, at *2 (Tex. App.—Houston [1st Dist.] Apr. 28, 2020, no pet.) (mem. op.); *Arzola v. ACM Props., LP*, No. 04-12-00713-CV, 2013 WL 5948413, at *2 (Tex. App.—San Antonio Nov. 6, 2013, no pet.) (mem. op.). The appellate court has no duty to brief issues for an appellant. *Shetty*, 2020 WL 2026371, at *2; *Hornbuckle*, 2016 WL 3157569, at *2. Likewise, we are not responsible for searching the record for facts that are favorable to the appellant's position. *Hornbuckle*, 2016 WL 3157569, at *2. Failure to provide citation to the record or citations for legal references constitutes inadequate briefing and waiver. *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 283–84 (Tex. 1994); *Shetty*, 2020 WL 2026371, at *2; *Hornbuckle*, 2016 WL 3157569, at *2.

13

The Appellant's Brief is wholly inadequate regarding Wilson. The Brief only mentions Wilson in very cursory and conclusory statements and mostly without reference to the record,

a) "Wilson did not deny making communications derogatory to NexPoint. Indeed, his Motion relies upon him making communications. His only affidavit testimony is to state his role as President of UMT Holdings, L.P. the parent company of an advisor to UDF IV that provides investor relations support."

b) "Wilson acted with negligence." [referring to a prima case of defamation and business disparagement]

c) "NexPoint Presented Prima Facie Proof That UDF IV and Wilson Published False Statements of Fact"

Even if such cursory statements amounted to adequate briefing, these references are incomplete and misleading when looking further into the record. In Appellant's own response to Wilson's Motion to Dismiss, it attached excerpts from Wilson's deposition, referenced above. Those excerpts do not indicate that Wilson made any communications. At most, he was part of a corporate review process that was ultimately controlled by UDF through its senior management and legal counsel. Although Appellant seems to be relying on Wilson's alleged failure to deny making communications, such reliance is misplaced since its allegations about Wilson were conclusory and conclusory allegations are not competent evidence, even in a TCPA setting. *Avid Square Const. LLC*, 2023 WL 3113950, at \*9–10.

Even more troublesome is the Appellant's complete lack of analysis and citation to legal authority relating to Wilson. Wherever Appellant mentions Wilson, it

14

does so simply by lumping him into its discussion of UDF. *See* Tex. R. App. P. 38.1(i). Since we have no independent duty to review the record to determine whether there was error, and with only conclusory "factual" statements about Wilson, with little or no record references and no meaningful analysis of error allegedly committed by the trial court pertaining to Wilson, we hold that Appellant has waived any error regarding Wilson due to inadequate briefing. *Shetty*, 2020 WL 2026371, at *2; *Hornbuckle*, 2016 WL 3157569, at *2.

### (b) Claims against UDF

Does the commercial speech exemption apply to Appellant's claims against UDF? We hold that it does.

The first element of the commercial speech exemption is that the defendant, UDF, was primarily engaged in the business of selling or leasing goods or services. Services is not a defined term. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001. Therefore, we look to its common meaning. *See Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 242 (Tex. App.—Eastland 2019, no pet.) (explaining that, because the term "goods" is not defined in the TCPA, the courts should look to its common meaning). To determine a term's common, ordinary meaning, we typically look first to dictionary definitions. *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 575–76 (Tex. App.—Fort Worth 2019, pet. denied) ("[W]e must be especially careful to follow this 'dictionary-driven' analysis when interpreting the language of the TCPA."). According to the Britannica Dictionary, "service" includes "work done by an

15

organization or person that does not involve producing goods." *Service*, Britannica Dictionary, http://www.britannica.com/dictionary/service (last visited July 28, 2023). "Services" is also defined as "economic commodities, such as banking, that are mainly intangible and usually consumed concurrently with their production." *Services*, Dictionary.com, http://www.dictionary.com/browse/service (last visited July 31, 2023).

Clearly, UDF was in the business of selling financial services. As described above, UDF marketed and sold shares in its business and engaged in "work" to protect and enhance its shareholders' investment values as part of their purchase and ownership of the shares. *Service*, Britannica Dictionary. Although this did not involve the sale of goods, UDF performed this "work" for purchasers of its shares of stock, i.e., shareholders. *Id.* We hold that these activities constitute selling services within the meaning of the commercial speech exemption in Section 27.010(a)(2). Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2).

The second element of the commercial speech exemption requires us to determine if the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services. We hold that it did. UDF made the statements as part of its response to Appellant's overture to become involved in UDF's management. UDF's board specifically referenced its duty to protect its shareholders' investment value and

16

expressly asked Appellant to explain how it proposed to accomplish its objective. The last paragraph of UDF's July 22 letter stated:

> In light of the Board's concerns and other circumstances described above, if you wish to open a dialogue regarding a specific transaction, please provide responses to the conflict-of-interest-related questions outlined on the attachment to this letter, and detailed information about the "transaction" that you are interested in discussing with the Trust. The Board will review your responses and indicate whether it is comfortable proceeding.

This statement exemplifies how UDF was making the statements in question in its capacity as seller of its financial services. UDF was purporting to protect its investors while, at the same time, soliciting a proposal from Appellant to see if it made a proposal consistent with UDF's goal of enhancing profits and value.

The third requirement for the commercial speech exemption is whether the statement or conduct at issue arose out of a "commercial transaction" involving the kind of goods or services the defendant provides. *Id.* We hold that it did. Both parties acknowledged that they were engaging in communications regarding a potential "transaction." Since the term "commercial transaction" is not defined, *see id.* § 27.001, we again turn to the common meaning of the phrase. *Kawcak*, 582 S.W.3d at 575. "A commercial transaction is generally a business deal." *Winstead PC v. USA Lending Grp., Inc.*, 664 S.W.3d 384, 393 (Tex. App.—Tyler 2021, pet. granted) (mem. op.) (citing *Commercial Transaction*, Black's Law Dictionary (10th ed. 2014)), *rev'd on other grounds, USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 205 (Tex. 2023). This "transaction" was clearly related to a "business deal." *See id.*

The commercial speech exemption does not require a completed transaction. *Hieber*, 591 S.W.3d at 212. A "commercial transaction" can include conduct or statements that merely propose a commercial transaction. *Castelman*, 546 S.W.3d at 690 (holding that the commercial speech exemption applies to communications that do no more than propose a commercial transaction); *Rose v. Sci. Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, at *6 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.).

We hold that the communications in question related to a "commercial transaction" involving the kinds of goods or services that UDF provides. *See Molina Healthcare, Inc. v. State ex rel Thurmond*, No. 03-20-00077-CV, 2020 WL 7233609, at *3 (Tex. App.—Austin Dec. 9, 2020, pet. denied) (mem. op.).

The last requirement of the commercial speech exemption is whether the intended audience of the statement or conduct was actual or potential customers of the defendant for the kind of goods or services the defendant provides. We answer this query in the affirmative. In his deposition, Greenlaw testified that the July 22 letter by UDF was sent to broker–dealers that represented or that had UDF accounts in addition to being filed with its SEC 8-K filing and press release to the public. The same is true for the September 1 press release and other communications which reiterate many of the same negative "concerns" of UDF about Appellant.

UDF's communications were exempted from the application of the TCPA by the commercial speech exemption. The trial court's dismissal was erroneous. We

18

reverse the judgment of the trial court dismissing Appellant's claims against UDF and awarding UDF its attorney's fees and remand the case to the trial court for further proceedings.

## IV.   Conclusion

We sustain Appellant's first issue—UDF's communications in question were exempted under the TCPA's commercial speech exemption, so we reverse the judgment of the trial court in favor of UDF and remand the case for further proceedings. As to Wilson, we overrule Appellant's presumed issues two through four for the reasons stated above, so we affirm the trial court's judgment dismissing Appellant's claims against Wilson. However, because the trial court awarded attorney's fees jointly to UDF and Wilson, and UDF is not entitled to attorney's fees under our disposition of the appeal, we will reverse the attorney's fees judgment in favor of Appellees jointly and remand the issue of attorney's fees for Wilson for subsequent proceedings in the trial court.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  August 3, 2023

19