# IN THE SUPREME COURT OF TEXAS

═════════════
No. 16-0229
═════════════

STEPHEN NOLAN BEDFORD, ALSO KNOWN AS NOLAN BEDFORD, PETITIONER,

v.

DARIN SPASSOFF AND 6 TOOL, LLC, FORMERLY KNOWN AS DALLAS DODGERS
BASEBALL CLUB LLC, D/B/A DALLAS DODGERS BASEBALL, RESPONDENTS

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**PER CURIAM**

This is a libel case brought by a business and its sole owner. We must decide if the plaintiffs established a prima facie case that could survive a motion to dismiss under the Texas Citizens Participation Act. In a split decision, the court of appeals held, among other things, that the statement in dispute was defamatory per se and therefore damages could be presumed. We disagree, holding that the statement cannot be defamatory per se and the plaintiffs failed to establish the necessary damages element by clear and specific evidence. We reverse the court of appeals' judgment as to the libel claim and remand it to the trial court for dismissal and determination of attorney's fees consistent with the Act.

I

Darin Spassoff is the sole owner and president of 6 Tool, LLC, formerly known as Dallas Dodgers Baseball Club, LLC, a youth baseball-instructional organization. Stephen Nolan Bedford's son was a member of the Dodgers.

On September 12, 2014, Bedford contacted Spassoff to allege that Bedford's wife had engaged in an inappropriate relationship with Terry Cruz, the Dodgers' batting coach. A variety of heated communications between them followed the same day. That evening, Bedford sent Spassoff a copy of a Facebook post that Bedford had just made using his wife's account.[1] The post, which has been modified to redact some profile attributes, is reproduced below:



_____

[1]  Bedford's now ex-wife was a defendant in the underlying suit and an appellant in the court of appeals, but she is not party to this appeal. In this opinion, we have omitted discussion of her procedural involvement.

More communications followed, allegedly including threats by Bedford to protest at the Dodgers' practice the next day. Within a few weeks, Spassoff had Bedford's post removed from the Dodgers' Facebook page.

Spassoff and the Dodgers sued Bedford for libel and business disparagement. Spassoff also asserted a claim for intentional infliction of emotional distress. The Dodgers asserted a claim for tortious interference with a contract or, alternatively, a claim against Bedford and his now ex-wife for breach of contract.

Bedford moved to dismiss all the claims under the Texas Citizens Participation Act, arguing that the plaintiffs brought the claims to prevent him from "engaging in constitutionally protected activities." The trial court denied his motion to dismiss. Bedford then filed an interlocutory appeal.

The court of appeals, over a partial dissent, affirmed in part and reversed in part. It held that Bedford met his initial burden under the Act by demonstrating that the claims against him were premised upon statements made in connection with a matter of public concern. 485 S.W.3d 641, 646–48 (Tex. App.—Fort Worth 2016). But it also held that Spassoff and the Dodgers established a prima facie case for each essential element of their libel claim, and therefore the trial court did not err by denying Bedford's motion to dismiss as to that claim. *Id.* at 649. It further held that the trial court erred by denying Bedford's motion to dismiss with regard to the other claims (business disparagement, infliction of emotional distress, tortious interference, and breach of contract) and reversed as to those claims. *Id.* The court remanded the libel claim for further proceedings in accordance with the Act. *Id.*

One justice dissented "from the majority's failure to reverse the trial court's judgment denying [Bedford's] motion [to] dismiss the libel claim." *Id.* at 650 (Walker, J., dissenting). She would have held that the Facebook post "at most, is opinionated criticism" and, even if it is defamatory, it is not defamatory per se and no damages were established. *Id.* at 652–53.

II

The scope of our review of this case is narrow. Only the libel claim is before us. The court of appeals' holding that the Act applies has not been challenged. Respondents did not file a cross-petition, or even brief their position on the merits.

Under the Act, a defendant may file a motion to dismiss an action that "is based on, relates to, or is in response to a party's exercise of the right of free speech." TEX. CIV. PRAC. & REM. CODE § 27.003(a). "In reviewing that motion, the trial court is directed to dismiss the suit unless 'clear and specific evidence' establishes the plaintiffs' 'prima facie case.'" *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (quoting TEX. CIV. PRAC. & REM. CODE § 27.005(c)).

The elements of a prima facie case for defamation are: (1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se. *D Magazine Partners, L.P. v. Rosenthal*, ___ S.W.3d ___, ___ (Tex. 2017) (citing *Lipsky*, 460 S.W.3d at 593; *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).

Under the Act, more than mere notice pleading is required to establish a plaintiff's prima facie case. *Lipsky*, 460 S.W.3d at 590–91. Clear and specific evidence means that the "plaintiff must

4

provide enough detail to show the factual basis for its claim." *Id.* at 591. "In a defamation case that implicates the [Act], pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist" a motion to dismiss under the Act. *Id.* When considering the motion to dismiss, the court considers both the pleadings and any supporting and opposing affidavits. TEX. CIV. PRAC. & REM. CODE § 27.006(a).

Bedford argues, and the dissenting justice agreed, that the statements contained in the Facebook post were not defamatory. But we need not decide that issue. A plaintiff asserting a defamation claim "must plead and prove damages, unless the defamatory statements are defamatory per se." *Lipsky*, 460 S.W.3d at 593. Even if the Facebook post here were defamatory, the statement is not defamation per se and Spassoff and the Dodgers failed to establish damages by clear and specific evidence.

The court of appeals held that Bedford's statements were defamatory per se because Bedford had "indirectly accused [the respondents] of lacking a peculiar or unique skill that is necessary for the proper conduct of the Dodgers' business—the moral judgment necessary to appropriately lead a group of youths in furtherance of an extracurricular activity." 485 S.W.3d at 649. Because Bedford's statements had "the potential to inflict financial injury upon the Dodgers' business," the court of appeals held they amounted to defamation per se. *Id.* at 648.

We disagree with that analysis. "While a defamatory statement is one that tends to injure a person's reputation, such a statement is defamatory per se if it injures a person in her office, profession, or occupation." *Hancock v. Variyam*, 400 S.W.3d 59, 62 (Tex. 2013). In *Hancock*, we

5

held statements that a physician lacked veracity and dealt in half-truths were not defamatory per se because they did not injure the physician in his profession by ascribing that he lacked a necessary skill peculiar or unique to the profession of being a physician. *Id.* at 67. "Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession." RESTATEMENT (SECOND) OF TORTS § 573 cmt. e (cited approvingly in *Hancock*, 400 S.W.3d at 67). As we said in that case: "If an accusation of untruthfulness is defamatory per se for a physician in her profession, it would likewise be defamatory per se for other trades, businesses, and professions that rely on human interaction." *Hancock*, 400 S.W.3d at 68.

The same logic controls here. Bedford's post did not accuse Spassoff or the Dodgers of lacking a peculiar or unique skill related to baseball or to running a baseball organization. *Cf. id.* at 64–67. We agree with the dissenting justice that a "statement disparaging the Dodgers for not preventing a batting coach from engaging in an extramarital affair or for not disciplining such a coach in some unidentified manner . . . is not the disparagement of a character or quality that is essential to the business of operating a baseball club." 485 S.W.3d at 654 (Walker, J., dissenting). If an accusation that a baseball-instructional business failed to prevent its contractor or employee from having an extramarital affair, or that the business did not handle the situation properly after the affair was discovered, is defamation per se, then it would likewise be defamatory per se for all other businesses that encounter people who are married. As we said in *Hancock*, that cannot be.

6

Because the statements in the Facebook post were not defamatory per se, Spassoff and the Dodgers bore the burden of establishing damages by clear and specific evidence. *See Lipsky*, 460 S.W.3d at 593. They failed to so.

The prayer for relief in Spassoff and the Dodgers' original petition seeks actual and exemplary damages, but neither the petition, nor their response to Bedford's motion to dismiss, nor Spassoff's affidavit attached to the response, identifies any actual damages. As Justice Walker correctly noted in her dissent, Spassoff and the Dodgers did not plead or prove that anyone read the Facebook post before it was removed. They did not plead or prove that the Dodgers received any calls or expressions of concern regarding the post. They did not plead or prove that they lost any clients because of the post.

The respondents did plead that one practice was cancelled, but offered no evidence of monetary or other damages suffered as a result. Further, Spassoff attests in his affidavit that the "conflict with the Bedfords has caused [him] countless hours of duress." Assuming, without deciding, that this statement refers to damages that are actionable in libel,[2] it is not sufficient evidence. "[G]eneral averments of direct economic losses and lost profits" do not satisfy the Act's clear-and-specific-evidence standard without "specific facts illustrating how [a defendant's] alleged remarks about [a plaintiff's] activities actually caused such losses." *Id.* at 592–93. The respondents have adduced no such evidence.

---

[2] "A libel is a defamation expressed in written or other graphic form . . . ." TEX. CIV. PRAC. & REM. CODE § 73.001. Spassoff's general reference to the "conflict" with the Bedfords, which goes well beyond the Facebook post at issue here, arguably does not relate to a written expression.

Bedford also argues that the court of appeals erred by considering evidence that was not properly before it. He claims the court relied on exhibits attached to Spassoff's appellate briefing that were not in the clerk's record. Having concluded that Spassoff failed to establish his prima facie case, we need not address this alleged error. But we note that this Court limited its review to the "appellate record[, which] consists of the clerk's record and, if necessary to the appeal, the reporter's record." TEX. R. APP. P. 34.1. The clerk's record and reporter's record include documents that were filed in or presented to the trial court. *See* TEX. R. APP. P. 34.5–.6.

\* \* \*

We grant Bedford's petition for review, and, without hearing oral argument, TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment as to the libel claim. We remand that claim to the trial court for dismissal and determination of attorney's fees consistent with the Act. *See* TEX. CIV. PRAC. & REM. CODE § 27.009(a).

OPINION DELIVERED: June 9, 2017