**Affirmed and Opinion Filed September 23, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-24-00176-CV

### KELLI DEWISPELARE, Appellant
### V.
### JAMIE DEWISPELARE, Appellee

### On Appeal from the 116th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-23-14602

## MEMORANDUM OPINION

Before Justices Molberg, Breedlove, and Kennedy
Opinion by Justice Breedlove

Kelli DeWispelare appeals the trial court's denial of her motion to dismiss

Jamie DiWispelare's claims under the Texas Citizens Participation Act. TEX. CIV.

PRAC. & REM. CODE ANN. §§ 27.001–.011 (TCPA). Concluding that Jamie[1] offered

clear and specific evidence on each element of his claims and Kelli did not establish

she was entitled to judgment as a matter of law on her affirmative defenses, we

affirm the trial court's order.

---

[1] The parties use their first names in their briefing; we will do the same.

## BACKGROUND

For purposes of the TCPA, the basis of a legal action is determined by the plaintiff's allegations. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). Accordingly, our factual background for this opinion is taken from Jamie's pleadings and the affidavit he filed in connection with the motion to dismiss.

Jamie describes the parties as "estranged husband and wife going through a contentious divorce in Florida." Jamie now lives and works in Texas. Jamie alleges that "[i]n or around November 2022," Kelli mailed a manila envelope to his Dallas employer "containing nine police reports full of false allegations she had made against [Jamie], ranging from alleged physical and verbal abuse to destruction of property, murder threats, and even a very specific over-the-top claim that [Jamie] struck [her] in the head and tied her up for hours." Jamie asserts that "[a]ll of these allegations are categorically false."

The parties refer to the envelope and its contents as "the Mailing." The reports in the Mailing are dated between May 14, 2022, and July 19, 2022. All are entitled "St. Johns County Sheriff's Office Call History Record" with the exception of a docket sheet from a "Family—Other Family lawsuit" filed by Kelli against Jamie in "St. Johns County Courts" on July 15, 2022. The "Call History Records" all reflect calls by Kelli to the sheriff's office complaining about Jamie.

Jamie filed this lawsuit on September 8, 2023. He alleged causes of action for "defamation/libel per se," and "defamation/libel."

–2–

Kelli filed an answer and a TCPA motion to dismiss. In her supporting affidavit, Kelli denied preparing or sending the Mailing "to anyone, including [Jamie's] employer." She stated she had "no knowledge of how, when, or who prepared or sent the [Mailing] or why it was prepared or sent." She sought dismissal of the lawsuit on the ground that her reports to the police were an exercise of her right of free speech and her right to petition. She argued that her reports to law enforcement were matters of public concern "because they relate to crime and safety in the community." She also argued that her right to file a police report, "even if allegedly false," "is a protected right to petition the government," and that police reports are communications pertaining to judicial proceedings. Kelli also argued that Jamie's claims were barred by limitations and by "the absolute privilege applicable to judicial documents and proceedings."

After a hearing, the trial court denied Kelli's motion to dismiss. This appeal followed.

## APPLICABLE LAW AND STANDARD OF REVIEW

The TCPA protects citizens from retaliatory lawsuits that seek to silence or intimidate them for exercising their rights in connection with matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding). *See generally* TCPA §§ 27.001–.011. The stated purpose of the statute is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by

–3–

law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam) (discussing TCPA's purpose).

To accomplish this purpose, the statute provides a procedure to expedite dismissing claims brought to intimidate or to silence a defendant's exercise of a protected right. *Coleman*, 512 S.W.3d at 898; *see also* TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on or is in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. & REM. CODE § 27.005(b); *see also S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). A movant may seek dismissal even if she denies making the communication. *Hersh v. Tatum*, 526 S.W.3d 462, 463 (Tex. 2017).

If the movant makes this initial showing, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of its claims. TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see also Elliott*, 564 S.W.3d at 847. "Prima facie case" refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *Lipsky*, 460 S.W.3d at 590. This standard requires the nonmovant to bring forth "the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is

–4–

true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam)). "Prima facie evidence is evidence that will suffice as proof of a fact in issue; in other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Mishkoff v. Garrett*, No. 05-22-01063-CV, 2024 WL 770142, at *3 (Tex. App.—Dallas Feb. 26, 2024, pet. denied) (mem. op.) (internal quotation omitted).

Finally, the court must dismiss the legal action if the movant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).

We review de novo the trial court's ruling on a motion to dismiss under the TCPA. *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). "In conducting this review, we consider, in the light most favorable to the non-movant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based." *Dyer*, 573 S.W.3d at 424 (internal quotation omitted); *see also* TEX. CIV. PRAC. & REM. CODE § 27.006(a). However, the plaintiff's petition is generally "the best and all-sufficient evidence of the nature of the action." *Hersh*, 526 S.W.3d at 467 (internal quotations omitted).

### DISCUSSION

Kelli raises five issues. First, she argues generally that the trial court erred by denying her motion to dismiss. Second, she contends she met her burden to establish

–5–

that Jamie's suit is based on her right of free speech on a matter of public concern. Third, she argues that Jamie failed to establish, by clear and specific evidence, a prima facie case on each element of his claims. Fourth, she argues in the alternative that Jamie's claims are barred by the statute of limitations. Fifth, she contends in the alternative that Jamie's claims are barred by the judicial proceedings privilege.

For purposes of this appeal, Jamie does not dispute that his suit "is based on or in response to" Kelli's exercise of her rights of free speech. *See* TCPA § 27.005(b)(1)(A), (B).[2] As a result, Jamie bore the burden to establish, by clear and specific evidence, a prima facie case for each essential element of his claim. *See* TCPA § 27.005(c); *see also Elliott*, 564 S.W.3d at 847. Establishing a prima facie case is not a high hurdle. *USA Lending Grp., Inc. v. Winstead, PC*, 669 S.W.3d 195, 198, 205 (Tex. 2023).

**1. Jamie's prima facie case**

"The elements of a prima facie case for defamation are: (1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a

---

[2] Here, given our conclusions below that Jamie has met his burden in step two of the analysis and Kelli has not met her burden in step three, analysis of step one is not necessary to our disposition of the appeal, and we need not consider that step further. *See* TEX. R. APP. P. 47.1; *Belcher v. King*, No. 03-19-00222-CV, 2020 WL 4726593, at *9 (Tex. App.—Austin July 30, 2020, pet. denied) (mem. op.) (after concluding that nonmovants produced sufficient evidence of their defamation counterclaim, court of appeals assumed TCPA applied and pretermitted consideration of appellants' issue challenging the TCPA's application).

private individual); and (4) damages, unless the statement constitutes defamation per se." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017).

In *Bedford*, the supreme court explained that "more than mere notice pleading is required to establish a plaintiff's prima facie case." *Id.* "Clear and specific evidence means that the 'plaintiff must provide enough detail to show the factual basis for [his] claim.'" *Id.* (quoting *Lipsky*, 460 S.W.3d at 591). "'In a defamation case that implicates the [Act], pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist' a motion to dismiss under the Act." *Id.* (quoting *Lipsky*, 460 S.W.3d at 591). "When considering the motion to dismiss, the court considers both the pleadings and any supporting and opposing affidavits." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a)). Jamie argues that he proffered evidence establishing a prima facie case of defamation.

***False statement.*** The entire Mailing is attached to Jamie's sworn declaration supporting his response to Kelli's motion to dismiss. In his declaration, Jamie testified that in the Mailing's police reports, Kelli "made countless false and damaging statements about me, including accusing me of multiple criminal acts." Jamie addressed each statement in each report, including Kelli's statements that he was "harassing her by phone calls," making verbal threats, making suicide threats, and threatening to "come back to her house." He denied Kelli's accusations that he "showed up at the house . . . and then left," "placed cameras in the home to watch

–7–

her," drained a bank account, subjected her to "physical, emotional, and financial abuse," and had become "even more violent and unpredictable towards her and the kids." We conclude that Jamie proffered clear and specific evidence of "the facts of when, where, and what was said" in the Mailing, and he testified that "what was said" was false. *See Bedford*, 520 S.W.3d at 904.

Kelli does not dispute making the statements to the police. She does argue, however, that there is "no proof of [her] involvement" in sending the Mailing, and no "evidence that anybody read its contents." Contrary to these contentions, Jamie testified that his employer's director of human resources "contacted me and showed me a [manila] envelope [the employer] had recently received in the mail, unsolicited," containing copies of the docket sheet and police reports. He also testified that he is familiar with Kelli's handwriting, and the handwriting on the Mailing envelope appears to be hers. He testified that Kelli "knew my new employer's address because I told her verbally and as part of our divorce proceedings." He also stated he "thought long and hard about who but [Kelli] could have had the motive, means, and opportunity to send the [Mailing]. I can think of no one else who would have access to its contents, know of my current employer, and have any reason to send the docket and police reports to anyone." We conclude Jamie offered clear and specific evidence to show the factual basis for his claim that Kelli sent the Mailing. *See Lipsky*, 460 S.W.3d at 590 (nonmovant must bring forth the

minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true).

***Defamatory.*** "A statement is defamatory if the words tend to injure a person's reputation, exposing them to public hatred, contempt, ridicule, or financial injury, or if it tends to impeach the person's honesty, integrity, or virtue." *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 202 (Tex. App.—El Paso 2017, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 73.001, "Elements of Libel"). "To qualify as defamation, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace." *Id.* Kelli's statements to the police, reflected in the police reports in the Mailing, include her allegations that Jamie repeatedly harassed, threatened, and abused her. She also accused Jamie of physical assault. As we discuss below, accusing someone of a crime is an example of defamation per se, a statement that is "so obviously harmful" that general damages are presumed. *Lipsky*, 460 S.W.3d at 593. We conclude that Jamie offered clear and specific evidence that Kelli's statements in the Mailing were defamatory. *See* TCPA § 27.005(c).

***Degree of fault.*** "A private individual need only prove negligence" as the degree of fault to support a defamation claim. *Lipsky*, 460 S.W.3d at 593. In the context of a defamation claim, we consider whether a defendant acted with negligence regarding the truth of the statements. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (standard for plaintiffs who are private

–9–

individuals). Only Kelli and Jamie have knowledge of what actually happened, or did not happen, between them. At this stage, Jamie's burden was to offer sufficient evidence to entitle him to recover if Kelli offered no evidence to the contrary. *See Lipsky*, 460 S.W.3d at 590. We conclude he did so here.

***Damages*.** A plaintiff must show that a defamatory statement proximately caused damages unless the statement is defamatory per se. *Bedford*, 520 S.W.3d at 904. "Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed." *Lipsky*, 460 S.W.3d at 596. Whether a statement qualifies as defamation per se is generally a legal question. *Id.* The supreme court has held that accusing someone of a crime is defamatory per se. *Id.* Here, for purposes of this TCPA motion, Kelli's statements can be understood as accusing Jamie of the crime of assault, among other offenses. Thus, Jamie was not required to show proof of damages. *See id.*

We conclude that Jamie offered clear and specific evidence of each element of his claim for defamation. TCPA § 27.005(c); *see Lipsky*, 460 S.W.3d at 592. We overrule Kelli's third issue.

## 2. Kelli's affirmative defenses

In her fourth and fifth issues, Kelli contends she established two affirmative defenses as a matter of law: (1) that Jamie's claims are barred by limitations, and (2) that Jamie's claims are barred by the judicial proceedings privilege. "A TCPA movant relying upon an affirmative defense for dismissal must conclusively

–10–

establish that defense and, if any exceptions to the defense are pleaded by the nonmovant, the movant must also negate the pleaded exceptions." *Gautreaux v. May*, No. 05-22-00616-CV, 2023 WL 5740179, at *8 (Tex. App.—Dallas Sept. 6, 2023, pet. denied) (mem. op.) (internal quotation omitted).

***Limitations*.** Jamie's claims for defamation have a one-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.002(a). "[C]laims for defamation . . . generally accrue when the allegedly defamatory matter is published or circulated." *Glassdoor, Inc. v. Andra Grp., LP*, 575 S.W.3d 523, 528 (Tex. 2019). Kelli argues that the police reports were "published no later than July 26, 2022"— the date of her last complaint to police—and Jamie did not file his suit until September 8, 2023, more than one year later. Jamie responds that his suit is premised on his claim that Kelli sent the Mailing to his employer in November 2022.

Kelli cites *Glassdoor*, 575 S.W.3d at 528, in support of her argument that Jamie's claims are barred by limitations. In *Glassdoor*, the court explained that "Texas courts apply the 'single publication rule' in cases of alleged libel in mass print media." *Id.* "Under that rule, a cause of action accrues 'on the last day of the mass distribution of the printed matter containing the defamatory statement,' which is when 'the publisher of the statement has made the libelous matter available to his intended audience.'" *Id.* (quoting *Stephan v. Baylor Med. Ctr. at Garland*, 20 S.W.3d 880, 889 (Tex. App.—Dallas 2000, no pet.)). In *Glassdoor*, the court held that "the single publication rule applies to information made publicly available on the

internet." *Id.* Kelli argues that the police reports were "published no later than July 26, 2022," the latest date on any of the police reports included in the Mailing. Jamie alleges, however, that the Mailing was sent to his employer in November 2022.[3]

Although *Glassdoor* extended the single publication rule from mass media publications to publicly available information on the internet, the court said nothing about separate publication of a police report by a single, individually-addressed, non-electronic mailing to a specific recipient, months after the report was made. *Cf. id.* (cause of action accrues on last day of "mass distribution"). Kelli cites no case extending *Glassdoor* in similar circumstances, and we have found none. Instead, we conclude that the Mailing was a separate publication of Kelli's statements in the police reports. "Each distinct publication of a defamatory statement inflicts an independent injury from which a defamation cause of action may arise." *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 340 (Tex. App.—San Antonio 2000, pet. denied) (citing *Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 394 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.), and *Fisher v. Beach*, 671 S.W.2d 63, 67 (Tex. App.—Dallas 1984, no writ)). "Texas law treats each alleged defamatory publication as a single transaction with an independent injury." *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 587 (Tex. App.—Austin 2007, pet. denied) (citing *Akin*) (involving different instances

---

[3] Kelli does not suggest any different date for the Mailing; instead, she questions whether the Mailing was sent at all. As we have explained, however, Jamie offered evidence that his employer received the Mailing in the mail in "mid-November 2022," and Kelli did not offer any evidence to the contrary.

of alleged defamation that were communicated to different audiences); *see also Fisher*, 671 S.W.2d at 67 ("each republication of an allegedly defamatory communication inflicts an independent injury from which a slander cause of action may arise").

Kelli further argues that there was no "republication" of the documents in the Mailing that would trigger a new accrual date for Jamie's claims. She contends that "republication" does not apply to publicly available information, and police reports are public records. Kelli cites *Young v. CompUSA, Inc.*, No. 3:03-CV-0268-P, 2004 WL 992577, at \*5 (N.D. Tex. Apr. 30, 2004) (Order), an employment discrimination case, in support of her argument.

In *Young*, the plaintiff's defamation claim arose from a police report filed by the employer's human resources representative alleging that the plaintiff had assaulted him and had stolen from their employer. *Id.* The plaintiff argued that the police report was continuously "republished" by remaining online in the district attorney's files until the charges were dismissed. *Id.* Among other authority, the plaintiff relied on case law holding that each transmission of a confidential credit report was a new and separate injury. *Id.* Rejecting this argument, the court first noted that the plaintiff "failed to offer any competent summary judgment evidence to prove that the false statements were republished." *Id.* The court went on to note that police reports "are generally public information" and credit reports are not, and concluded that "[i]n the absence of any evidence of transmission of confidential or

restricted information to a new audience, republication of the defamatory material will not operate to extend the statute of limitations." *Id.*

Here, in contrast, Jamie offered proof of the statements' "republication" in the Mailing. He does not argue, as the plaintiff did in *Young*, that there was continuous republication by the reports' continued presence in the police records. *Cf. id.*

The parties also cite *Yadav v. Frost Bank*, No. SA-20-CV-00005-FB-ESC, 2020 WL 7385842, at *6 (W.D. Tex. Dec. 16, 2020) (Report and Recommendation of U.S. Magistrate Judge), *aff'd*, 851 Fed. App'x 509 (5th Cir. 2021) (mem. op., per curiam), in support of their arguments regarding whether limitations has run on Jamie's claims. In *Yadav*, Vinay Yadav sued Frost Bank for defamation based on allegations that the Bank published false statements about him in a police report. *Id.* at *6. Noting the one-year statute of limitations under Texas law, the court explained that because "[t]he allegedly false statements by Defendant were published as a matter of public record in a police report filed on November 19, 2018," Yadav was "deemed to know of the statements" on that date. *Id.* He did not file suit until December 3, 2019, more than one year later. *Id.* Yadav argued that the report was "republicized" three times on later dates, extending limitations on his claims, but the court explained that these "republications" were privileged filings—exhibits to the Bank's motion to dismiss filed in the lawsuit—that could not constitute the basis for defamation claims. *Id.*

Here, in contrast, the police reports were sent to Jamie's employer. And as the court in *Yadav* recognized, "[e]ach time a defamatory statement is brought to the attention of a third party, a new publication has occurred." *Id.* (citing *Renfro Drug Co. v. Lawson*, 160 S.W.2d 246, 251 (Tex. 1942)). "Thus, the republication of a defamatory statement can still fall within the limitations period even though the original publication is time-barred." *Id.* Unlike in *Yadav*, Jamie's suit is premised on the Mailing, not on the initial police report filings.

As we have discussed, Jamie offered evidence to support his contention that he filed this lawsuit less than one year after Kelli sent the Mailing to his employer. Therefore, we conclude that Kelli has not conclusively established her limitations defense. *See Gautreaux*, 2023 WL 5740179, at *8. We overrule Kelli's fourth issue.

***Judicial proceedings privilege.*** In her fifth issue, Kelli contends that Jamie's claims are "barred by the absolute privilege applicable to judicial documents and proceedings." She contends that the nine items in the Mailing "were prepared in connection with, or anticipation of, civil or criminal legal proceedings."

"The judicial-proceedings privilege is straightforward: Communications in the due course of a judicial proceeding will not serve as the basis for a civil action for libel or slander." *Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 46 (Tex. 2021) (internal quotation omitted). The court in *Landry's, Inc.* explained:

> The judicial-proceedings privilege is an absolute privilege that covers "any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements

–15–

made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James* [*v. Brown*], 637 S.W.2d [914] at 916–17 [(Tex. 1982)]. The privilege facilitates the proper administration of justice by promoting "full and free disclosure of information . . . by participants in judicial proceedings." *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015); *see also Bird v. W.C.W.*, 868 S.W.2d 767, 772 (Tex. 1994) ("[T]he administration of justice requires full and free disclosure from witnesses unhampered by fear of retaliatory lawsuits.") (internal quotation marks omitted).

*Id.* "Whether an allegedly defamatory communication is related to a judicial proceeding is a question of law, and we resolve all doubt in favor of the privilege." *Mishkoff v. Garrett*, No. 05-22-01063-CV, 2024 WL 770142, at \*4 (Tex. App.— Dallas Feb. 26, 2024, pet. denied) (mem. op.).

Jamie responds that (1) his claims are based on statements made to his employer, not statements made in the course of a judicial proceeding, (2) his claims are based on the publication of false statements to his employer in Dallas in November 2022, not on Kelli's false statements to police in the summer of 2022, and (3) the judicial proceedings privilege is absolute, while statements to police are only "qualifiedly privileged."

In *Landry's, Inc.*, the owner of a Houston aquarium sued an animal rights organization (ALDF) for defamation after ALDF made statements on social media and in a press release critical of the conditions in the aquarium's tiger habitat. *Landry's, Inc.*, 631 S.W.3d at 44–45. The supreme court considered whether these pre-suit statements by ALDF's attorney were protected by the judicial proceedings

privilege. *Id.* at 46–47. The supreme court noted disagreement among the courts of appeals regarding the scope of the judicial proceedings privilege, and concluded:

> The reasoning of one court of appeals nearly a century ago remains compelling today:
>
>> The privilege accorded a litigant which exempts him from liability for damages caused by false charges made in his pleadings, or in the court in the course of a judicial proceeding, cannot be enlarged into a license to go about in the community and make false and slanderous charges against his court adversary and escape liability for damages caused by such charges on the ground that he had made similar charges in his court pleadings.
>
> *De Mankowski v. Ship Channel Dev. Co.*, 300 S.W. 188, 122 (Tex. App.—Galveston 1927, no writ).

*Landry's, Inc.*, 631 S.W.3d at 48. The court concluded that dissemination to the media of a notice letter, an accompanying press release, and other publicity statements made on social media were not protected by the judicial proceedings privilege. *Id.* at 50.

The Mailing consists of Kelli's reports to the police. Nevertheless, Jamie's complaint in this lawsuit is not that Kelli made reports to the police. Instead, he complains of Kelli's dissemination of the reports to his employer. As in *Landry's, Inc.*, Kelli cannot "escape liability for damages caused" by the statements in the Mailing on the ground that she had made the same charges in her reports to the police. *See id.* at 48. We conclude that Jamie's claims are not barred by the judicial proceedings privilege. We overrule Kelli's fifth issue.

–17–

## CONCLUSION

We affirm the trial court's February 1, 2024 "Order Denying Defendant's Motion to Dismiss."

240176f.p05

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KELLI DEWISPELARE, Appellant

No. 05-24-00176-CV     V.

JAMIE DEWISPELARE, Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-23-14602. Opinion delivered by Justice Breedlove. Justices Molberg and Kennedy participating.

In accordance with this Court's opinion of this date, the trial court's February 1, 2024 "Order Denying Defendant's Motion to Dismiss" is **AFFIRMED**.

It is **ORDERED** that appellee Jamie DeWispelare recover his costs of this appeal from appellant Kelli DeWispelare.

Judgment entered this 23rd day of September, 2024.