2026 Tex. Bus. 40

FILED IN
BUSINESS COURT OF TEXAS
BEVERLY CRUMLEY, CLERK
ENTERED
6/15/2026



The Business Court of Texas,
Eleventh Division

| | | |
|---|---|---|
| LOCAL MARKETING, INC. | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Cause No. 26-BC11A-0026 |
| | § | |
| ANGELA NICOLE BENNETT, HEIDI JO MCIVOR, MCIVOR MARKETING, LLC, ANDREW BECK, RACHAEL LILES CHADWICK, RLC ADVERTISING LLC, and KATHERINE LEIGH THOMAS | § | |
| *Defendants* | § | |

## MEMORANDUM OPINION AND ORDER

¶1 Before the court is the partial motion to dismiss the counterclaims of Defendants Heidi Jo McIvor and McIvor Marketing, LLC (collectively "McIvor") under the Texas Citizens Participation Act, filed by Plaintiff Local Marketing, Inc. ("Local"). McIvor and Local appeared through counsel and presented their arguments at a hearing before the court on June 5, 2026. Having considered the parties' briefing and oral argument, the pleadings, and the relevant law, the court grants Local's motion for the reasons set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a departing-employee case. Marketing company Local sued former executives and employees in a Harris County district court, alleging they formed a competing marketing company using Local's trade secrets and in breach of employment contracts. Following Local's removal of the case to the Texas Business Court, McIvor countersued for defamation and tortious interference with business relations based on letters Local sent to its former, actual, or prospective customers that it had learned were now Defendants' customers. *E.g.,* Am. Pet. ¶ 18 (claiming Defendants "poach[ed]" Local's customer Audi Charlotte); Mot. Ex. A (letter to Audi Charlotte); *see* Resp. Ex. A-4 at 45–46. Local moved to dismiss both claims under Texas's anti-SLAPP statute, the Texas Citizens Participation Act ("TCPA").

## MOTION STANDARD

The TCPA provides a three-step process for deciding a motion to dismiss. *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021). First, the movant must "demonstrate that the 'legal action' is 'based on or is in response to' the [movant's] exercise of the right of speech, petition, or association." *Id.* (quoting TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b)). If the movant meets this burden, then at the second step, "the claimant may avoid dismissal by establishing 'by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 27.005(c)). At the third step, a claim surviving step two will be dismissed if the movant "establishes an affirmative

2

defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 27.005(d)).

### I.    The TCPA applies to McIvor's counterclaims.

The TCPA applies to the counterclaims. The statute defines a "legal action" to include a counterclaim, and a TCPA motion to dismiss may be filed against a legal action that "is based on or is in response to a party's exercise of the . . . right to petition[.]" TEX. CIV. PRAC. & REM. CODE §§ 27.001(6), 27.003(a). The TCPA defines "exercise of the right to petition" to include "a communication in or pertaining to . . . a judicial proceeding." *Id.* § 27.001(4)(A)(i).

Local's letters were unquestionably TCPA "communications." *Id.* § 27.001(1) (defining *communication* as the "making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic"). McIvor's counterclaims are wholly based on and in response to these letters, which are the "gravamen of the claim[s]." *Walgreens v. McKenzie*, 713 S.W.3d 394, 400 (Tex. 2025) (internal quotations omitted).

And these communications directly "pertain[ed]" to the Harris County lawsuit, a judicial proceeding. Applying the statutory definition, Texas courts hold that statements made expressly and directly about a lawsuit pertain to the suit. *See Hanna v. Williams*, 681 S.W.3d 416, 424 (Tex. App.—Austin 2023, pet. denied) (holding "statements to [plaintiff] about the litigation" pertained to the suit under

3

TCPA); *Cardio Grp., LLC v. Kring*, No. 05-22-00101-CV, 2022 WL 17817971, at *4 (Tex. App.—Dallas Dec. 20, 2022, no pet.) (mem. op.) (holding letter to claimant's customers pertained to the underlying lawsuit where it cited the suit's caption and cause number and falsely described liens against equipment in customers' possession). Here, the letters attached the temporary restraining order from, cited the cause number and caption of, and described the ruling in, the Harris County lawsuit. The letters informed the customers that McIvor was "specifically restrained and enjoined, until March 3, 2026, and, potentially, further into the future, from 'contacting or soliciting LMI's current employees, consultants, or independent contractors,' as well as soliciting [Local's] customers. This includes you." Mot. Ex. A. The letters noted that, "[a]lthough [the recipient customer] is not presently named as a defendant, the Court's [TRO] is binding on persons and entities who receive actual or constructive notice of the injunction and who act in concert or participation with enjoined parties, to the extent applicable." *Id.*

¶7      The TCPA extends the protections of the "exercise of the right to petition" beyond communications "in" a judicial proceeding to those "pertaining to" the proceeding. TEX. CIV. PRAC. & REM. CODE § 27.001(4)(A)(i). Though Local's statements were not made **in** the lawsuit, they directly related to and concerned the suit—so they pertained to the suit as the TCPA requires. *See Adams & Reese LLP v. Emerald Elec. Consultants LLC*, No. 14-22-00741-CV, 2024 WL 1404622, at *4 (Tex. App.—Houston [14th Dist.] Apr. 2, 2024, no pet.) ("We construe the phrase

4

'pertaining to' according to its ordinary meaning as relating directly to or concerning or having to do with."). Indeed, the entirety of Local's three-page letter *pertained* to the lawsuit.

¶8 The counterclaim is based on or in response to Local's communications pertaining to the Harris County judicial proceedings. McIvor does not claim the commercial-speech exemption excludes its counterclaims from the TCPA's reach, so the TCPA applies.

## II. McIvor failed to meet its prima facie burden.

¶9 "The TCPA was designed to protect both a defendant's rights of speech, petition, and association and a claimant's right to pursue valid legal claims for injuries the defendant caused." *Borgelt v. Austin Firefighters Ass'n*, 692 S.W.3d 288, 311 (Tex. 2024). At this preliminary stage of the suit, McIvor need only present "the minimum quantum of evidence necessary to support a rational inference" that its factual allegations are true. *Id.* Evidence is "clear and specific" if it provides enough detail to show the factual basis for the claim. *USA Lending Group, Inc. v. Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023). Such evidence need not be conclusive, uncontroverted, or found credible. *Id.* McIvor's "rebuttal burden is not remotely equivalent to requiring early proof that the plaintiffs will ultimately prevail." *Borgelt*, 692 S.W.3d at 311.

¶10 The evidence, together with Local's own pleading admitting to many of the central facts, raises a rational inference, at this prima facie stage, of the following:

5

¶11 McIvor and Local are competitors. Local sought a customer-solicitation restraint against McIvor in the Harris County suit, but the resulting TRO instead contained employee-solicitation and nondisclosure restraints, among other restrictions. In the absence of the restraint Local wanted, Local's former attorney sought consent from the Defendants' attorneys to "correct" the TRO to add the customer-solicitation restraint, but they opposed that addition. So Local called McIvor's employee to identify its customers and, the day after unsuccessfully seeking consent to add customer nonsolicitation, wrote those customers the letter that is the subject of McIvor's claims.[1] Knowing there was no customer-solicitation restraint, Local informed these customers that the TRO "specifically restrained and enjoined" McIvor from contacting Local's employees "as well as **soliciting [Local's] customers. This includes you and your business.**" Mot. Ex. A at 1; D's Resp. Ex. B-3.[2] The letter also stated that McIvor was "acting in concert with Non-McIvor Defendants . . . to circumvent the direct prohibition on competing with L[ocal] and soliciting L[ocal]'s customers." *Id.* The day after sending the letters, Local filed a motion asking the trial court to make the customer-nonsolicitation addition, which

---

[1]    The letter states that "[Local] has asked us, as its outside counsel, to reach out to you and bring to your attention" the TRO restraints. Mot. Ex. A. Local does not deny that it acted through its attorney or otherwise claim he was acting outside his authority.

[2]    While Local lodges various evidentiary objections to McIvor's evidence, the letters' contents are not in dispute; Local attached a copy of the letter to its motion and its counsel admitted copies were sent to at least three specified companies.

it ultimately declined to do, allowing the TRO to expire and denying a temporary injunction.

## A. Damages are an essential element of both counterclaims.

¶12    Damages are a required element to both counterclaims that McIvor brings against Local. First, defamation of a private figure requires (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) made with negligence, and (4) damages. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). "Even though defamation's principal purpose is to provide a remedy for reputational harm (a noneconomic injury), plaintiffs may nevertheless recover special damages as well." *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply*, Inc., 603 S.W.3d 409, 418 (Tex. 2020). "Special damages . . . represent specific economic losses that must be proven." *In re Lipsky*, 460 S.W.3d at 593. To survive TCPA dismissal of a defamation claim, the claimant must show "the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff." *Id.* at 591.

¶13    Second, a claim for tortious interference with business relations "require[s] [the claimant] to prove that the tortious conduct at issue—here, defamation—caused it to suffer economic damages." *Landry's, Inc. v. Animal Legal Def. Fund*,

631 S.W.3d 40, 53 (Tex. 2021).[3]

### B. McIvor has not met its TCPA burden on damages.

¶14    The record presents no evidence of damage McIvor suffered from the letters, so the court need not reach the remaining elements of the two causes of action.

¶15    To survive a TCPA motion as to damages, a claimant's "evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct;" a "general averment of loss, like any conclusory opinion, is not sufficient." *USA Lending Group, Inc.*, 669 S.W.3d at 202. McIvor's declaration that it "was damaged" by the letters is conclusory and therefore insufficient. *Id.*

¶16    Beyond the conclusory averment of damage, McIvor devotes one line of its declaration to attesting it spent time "explaining the litigation, the actual contents of the TRO, and history with [Local], with each of the recipients, time that otherwise could have been devoted to revenue-producing activities." Resp. Ex. B ¶ 22. The court at this stage takes as true that McIvor's owner devoted time to describe the litigation to three customers instead of conducting other unnamed business activities. Even so, that fact is no evidence of economic or noneconomic damages.

---

[3]    Though the parties' briefing references a claim for "tortious interference with contract," McIvor's second counterclaim is one for "Tortious Interference with Existing and Prospective Contractual **Relations**" and the body of the counterclaim pleads only interference with existing or prospective "business relationships" without reference to a contract. McIvor's Counterclaim at 5–6. The TCPA record contains no evidence of a contract, either. Regardless, a claim for tortious interference with contract equally requires proof of "actual damage or loss." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

¶17      Rather than providing clear and specific evidence of damages to survive Local's TCPA challenge, McIvor's declaration is vague and insufficient. A nonmovant's averment that it "sustained direct pecuniary and economic losses and costs, lost profits, loss of its reputation, and loss of goodwill . . . in excess of three million dollars" fails to satisfy the TCPA hurdle on damages. *USA Lending Group, Inc.*, 669 S.W.3d at 202 (internal quotations omitted) (quoting *In re Lipsky*, 460 S.W.3d at 592). Such a statement is "devoid of any specific facts illustrating how the defendant's alleged remarks about the plaintiff's activities actually caused such losses." *Id.* (internal brackets omitted). Even where the claimant presents evidence of **specific, identifiable** customers that cancelled bookings because of "recent publicity" on the topic in the allegedly defamatory publications, a tortious-interference claim cannot survive a TCPA challenge absent evidence the customers "based their decision to cancel on statements in those stories attributed to the defendants." *Landry's*, 631 S.W.3d at 54-55.

¶18      If the *Landry's* evidence failed to show a "causal connection between any particular challenged statement by the defendants and [any] particular lost bookings," see *id.* at 54, McIvor's evidence falls far shorter. McIvor's owner does not declare the company suffered a drop in revenue as a result of the conversations with its customers, does not provide facts creating a "rational inference" of lost profits, and simply does not show that any harm ultimately befell the company because of the letters. *See In re Lipsky*, 460 S.W.3d at 592 (disagreeing that

9

declaration raised a rational inference that claimant "lost trade or other dealings" and requiring "specific facts" illustrating how remarks "actually caused such losses") (internal quotations omitted). The declaration does not suggest McIvor lost any discrete opportunity that would have been a foreseeable consequence of the letters, as needed for a consequential-damages theory to survive. *E.g., MSW Corpus Christi Landfill, Ltd. v. Gulley-Hurst, L.L.C.*, 664 S.W.3d 102, 107 (Tex. 2023) (holding opportunity-cost damages model from inability to invest in a new loan are consequential damages that can be recovered only if "the parties contemplated at the time they made the contract that such damages would be a probable result of the breach"); *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 187 (Tex. 2022) ("Foreseeability is an independent element of any claim for consequential damages.").

¶19 At best, McIvor wasted time on these three conversations rather than spend that time on more profitable activities, but McIvor cites no damages model that would allow recovery for that lost time. *See Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 825 (5th Cir. 2022) ("we are not aware of any tort that makes a person liable for wasting another's time").

¶20 Nor does McIvor attest that its reputation or its owner's reputation was damaged, and the declaration describes no mental anguish McIvor's owner suffered. While bare mention of having suffered these types of noneconomic damages is insufficient under well-settled precedent, *USA Lending Group, Inc.*, 669 S.W.3d at

10

202, McIvor does not make even a generalized declaration that it suffered such harm. McIvor's own statements instead suggest its efforts paid off in successfully preserving these business relationships. No damages are reasonably inferred on this record.

### C. McIvor has not created a rational inference of defamation per se.

¶21    McIvor, however, also pleads defamation per se. "Pleading and proof of particular damage is not required to prevail" on such a claim, "and thus actual damage is not an essential element of the claim to which the TCPA's burden of clear and specific evidence might apply." *In re Lipsky*, 460 S.W.3d at 596; *see Innovative Block of S. Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 423–24 (Tex. 2020) (Unlike certain "special damages that must be specifically pleaded and proved," "harm to reputation is a noneconomic injury that may be presumed when the defamation is actionable per se but otherwise requires evidence of actual harm."). Whether a statement is defamatory per se is first an inquiry for the court. *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013).

¶22    "While a defamatory statement is one that tends to injure a person's reputation, such a statement is defamatory per se if it injures a person in her office, profession, or occupation." *Bedford v. Spassoff*, 520 S.W.3d 901, 905 (Tex. 2017). The injury cannot be a generalized character insult. *Id.* Instead, the "particular quality disparaged [must be] of such a character that it is peculiarly valuable in the plaintiff's business or profession." *Id.* For example, in *Lipsky*, the plaintiff claimed

11

that "by being falsely branded as a polluter," the accusations "adversely affect[ed] the perception of [the plaintiff's] fitness and abilities as a natural gas producer." 460 S.W.3d at 596. But falsely accusing a physician of lacking veracity is "equally discreditable to all persons" and not peculiar to the medical profession. *Bedford*, 520 S.W.3d at 905 (citing *Hancock*, 400 S.W.3d at 67). And "disparaging the quality or condition of a business's product or service is not, standing alone, defamation per se." *Innovative Block of S. Tex., Ltd.*, 603 S.W.3d at 426-27.

¶23        Here, a false statement that McIvor had been temporarily enjoined from soliciting Local's customers is not uniquely injurious to the marketing profession, particularly compared to the undisputed truth—that McIvor **had** been enjoined from soliciting Local's employees and from accessing its customer lists and bank records. Resp. Ex. A-5. And, while accusing a person of committing a crime is actionable per se, *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 638 (Tex. 2018), the letters do not accuse McIvor of a crime or state that McIvor's conduct prompting the claimed customer-nonsolicitation restraint was illegal. The letter's objectionable sentence regarding customer solicitation, whether read in isolation or read in context, does not satisfy the Texas standard for a statement "so obviously detrimental to one's good name" that damages need not be proven. *See id.* at 624.

¶24        "A prima facie case refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Landry's, Inc.*, 631 S.W.3d at 46. Assuming without deciding that Local's statement (that the TRO restrained

12

customer nonsolicitation) was a verifiably false fact rather than an opinion, the statement fails to pass the TCPA test as to defamation per se. Even if the evidence were not rebutted or contradicted, the record reflects no defamation per se as a matter of law.

¶25     A showing that a statement is defamation per se provides no evidence of harm beyond the presumed nominal amount. *See Innovative Block of S. Tex., Ltd.*, 603 S.W.3d at 424. The court need not reach Local's argument that McIvor's failure to plead nominal damages, given no proof of general or special damages, is independently sufficient to dismiss the defamation-per-se theory.

¶26     The TCPA afforded McIvor the opportunity to seek discovery relevant to the motion to dismiss and to obtain additional time for that discovery before the hearing. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.004(c), 27.006(b). McIvor opted not to do so. However, the court notes that the events in this case are ongoing—for example, when the suit was removed to this court, Local was still in the process of seeking a hearing on its injunctive relief, and the parties' respective relationships with actual and prospective customers are developing in real time as this litigation proceeds. The TCPA creates a strict timeline for hearing and ruling on Local's motion. But leave of court is not currently required under this case's Scheduling Order to make pleading amendments before August 20, 2027, based on claims arising from new harm incurred by McIvor.

13

¶27 The TCPA standard is not an exacting one, but McIvor did not meet its burden to place a quantum of evidence before the court as to damages caused by the alleged defamation and tortious interference or regarding its theory of defamation per se. The counterclaims must be dismissed.

### III. The court need not reach Local's affirmative defense.

¶28 A TCPA movant seeking to bar a claim based on an affirmative defense must establish each element of that defense as a matter of law. *See Ferchichi v. Whataburger Rests. LLC*, 713 S.W.3d 330, 336 (Tex. 2025) (citing TEX. CIV. PRAC. & REM. CODE § 27.005(d)). Having concluded that the claims fail at the prima-facie stage, the court need not reach the question of whether Local conclusively proved its defense of judicial-proceedings immunity.

### IV. The court awards the mandatory fee award.

¶29 Because the motion must be granted, an attorneys' fee award is mandatory. TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1); *Ferchichi*, 713 S.W.3d at 336. In support of its fees request, Local's counsel submitted two fee declarations with redacted billing records. McIvor does not object to that evidence, contradict the fees proven, or otherwise dispute that the amount is reasonable or necessary. The court finds nothing excessive or unfair about Local's calculation and proof of the fees it incurred defending against McIvor's counterclaims. *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). The court awards the full amount of $18,010.00 sought by Local.

14

¶30       Finding no improper purpose in McIvor's counterclaims, the court declines to award sanctions under section 27.009(a)(2) of the Texas Civil Practices and Remedies Code.

**CONCLUSION AND ORDER**

For these reasons, the court GRANTS Local's motion to dismiss McIvor's counterclaims for (1) libel per se and statutory libel; and (2) tortious interference with existing and prospective contractual relationships.

The court ORDERS that McIvor pay Local $18,010 in attorney's fees.

The court further ORDERS that the TCPA suspension of discovery imposed by section 27.003(c) of the Texas Civil Practices and Remedies Code is lifted. Responses to any discovery requests that were pending during the suspension shall be served within 15 days of this Order.

SO ORDERED.

STACY ROGERS SHARP
Judge of the Texas Business Court,
Fourth Division, *sitting by assignment in the Eleventh Division*

SIGNED ON: June 15, 2026

15